**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ALLEN and JENNIFER SAGAN Individually and o/b/o JANE DOE, a minor,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) | **Civil Action No. 3:09-cv-1003** |
| | ) | |
| **SUMNER COUNTY BOARD OF EDUCATION** | ) | **Judge Thomas A. Wiseman, Jr.** |
| **and DONNA WEIDENBENNER Individually and** | ) | **Magistrate Judge Juliet E. Griffin** |
| **in her official capacity as Special Needs Teacher** | ) | |
| **of Station Camp Elementary School,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION**</u>

Before the Court are three separate motions filed by Defendants Sumner County Board of Education ("Board") or Donna Weidenbenner: (1) Motion to Strike (Doc. No. 20), filed by the Board, seeking to strike the allegations set forth in Paragraph 7 of the Complaint; (2) Motion to Dismiss (Doc. No. 22), filed by the Board pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, seeking dismissal on the grounds of lack of subject-matter jurisdiction and, alternatively, for failure to state a claim upon which relief may be granted; and (3) Motion to Dismiss filed on behalf of Weidenbenner, reiterating the Board's arguments for dismissal based upon Rule 12(b)(1) or 12(b)(6), but also asserting that the claims under Title II of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act, made against Weidenbenner in both her official and representative capacities, are subject to dismissal. Plaintiffs have filed one omnibus response in opposition to all three motions, and Sumner County has filed a single reply brief. The motions have been fully briefed and are ripe for resolution.

For the reasons set forth herein, the motions to dismiss will be granted in part and denied in part; the motion to strike will be denied.

**I. MOTIONS TO DISMISS**

**A. Standard of Review**

The Board asserts that dismissal is required under Rule 12(b)(1) for lack of subject-matter jurisdiction, based upon Plaintiffs' alleged failure to exhaust administrative remedies as required by the

Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(l).[1]  The Board also asserts that Plaintiffs have the burden of proving jurisdiction.

There is a dispute among the Circuit Courts of Appeals as to whether exhaustion of administrative remedies under the IDEA, is a jurisdictional requirement or whether exhaustion is merely a condition precedent for filing an IDEA lawsuit.  The Seventh and Eleventh Circuits have held that the failure to exhaust administrative remedies does not deprive a court of subject-matter jurisdiction.  *See, e.g.*, *Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989, 991 (7th Cir.1996); *N.B. by D.G. v. Aluchua County Sch. Bd.*, 84 F.3d 1376, 1379 (11th Cir. 1996).  These courts reason that the lack of exhaustion is usually waivable while lack of jurisdiction is not.  *Charlie F.*, 98 F.3d at 991.  In these jurisdictions, the failure to exhaust administrative remedies is an unmet condition precedent for filing a lawsuit, and may result in dismissal for failure to state a claim under Rule 12(b)(6) or on a motion for summary judgment.

Other courts have concluded that exhaustion of administrative remedies is a jurisdictional prerequisite.  *See, e.g.*, *Polera v. Bd. of Educ.*, 288 F.3d 478, 483 (2d Cir. 2002); *MM v. Sch. Dist. of Greenville County*, 303 F.3d 523, 536 (4th Cir. 2002); *Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1063 (10th Cir. 2002); *Witte v. Clark County Sch. Dist.*, 197 F.3d 1271, 1274 (9th Cir. 1999).  In these jurisdictions, the failure to exhaust administrative remedies results in dismissal for lack of subject-matter jurisdiction.  *Urban v. Jefferson County Sch. Dist. R-1*, 89 F.3d 720, 725 (10th Cir. 1996).

While the Sixth Circuit does not appear to have expressly decided this issue, a recent Supreme Court decision has made it clear that exhaustion generally, when statutorily required, is not a jurisdictional bar.  Rather, exhaustion is an affirmative defense that must be raised and proved by the defendant. *Jones v. Bock*, 549 U.S. 199, 212–13 (2007) (analyzing the exhaustion provision of the Prison Litigation Reform Act, 28 U.S.C. § 1915A, and finding that, although many lower courts, including the Sixth Circuit,

---

[1] The IDEA has gone through several name changes.  At various points it has been known as the Education of the Handicapped Act ("EHA") and the Education of All Handicapped Children Act (EAHCA).  Most recently, in 2004, Congress "reauthorized" and amended the IDEA in a statute given the short title "Individuals with Disabilities Education Improvement Act of 2004" ("IDEIA").  Pub. L. No. 108-446, 118 Stat. 2647 (Dec. 3, 2004), effective July 1, 2005.  Throughout this Opinion, statutory references will be to the "IDEA," except when quoted in opinions as the IDEIA or other acronym.

had treated this provision as jurisdictional, exhaustion is better regarded as an affirmative defense).[2]  In light of the analysis applied in *Jones v. Bock*, at least one other district court within the Sixth Circuit has concluded that failure to exhaust administrative remedies in the context of a claim brought under the IDEA is an affirmative defense, not a jurisdictional bar.  *B.H. v. Portage Pub. Sch. Bd. of Educ.*, No. 1:08-cv-293, 2009 WL 277051, at *3 (W.D. Mich. Feb. 2, 2009) (converting defendant's Rule 12(b)(1) motion into Rule 56 motion).  Other district courts within the Sixth Circuit have similarly considered the failure-to-exhaust issue without couching it as jurisdictional.  *See, e.g.*, *Doe v. Dublin City Sch. Dist.*, No. 2:09-cv-738, 2010 WL 1434318 (S.D. Ohio April 8, 2010) (dismissing complaint under Fed. R. Civ. P. 12(b)(6) based upon plaintiffs' failure to exhaust remedies).

As the disposition of *Doe v. Dublin City School District* suggests, the distinction is largely academic unless the objection has been waived, as the failure to exhaust may provide a grounds for dismissal, just not on the basis of lack of subject-matter jurisdiction.  Further, although construing the exhaustion requirement as an affirmative defense would ordinarily shift the burden of proof to the Board, the Sixth Circuit has clearly held that the "burden . . . rests with the [plaintiff] to demonstrate the futility or inadequacy of administrative review."  *Gean v. Hattaway*, 330 F.3d 758, 774 (quoting *Honig v. Doe*, 484 U.S. 305, 327 (1988)).  In the present case, the Board does not, for purposes of its motion, dispute the facts set forth in Plaintiffs' complaint, and the only issue presented is a legal one:  whether exhaustion was required in this case.  Because there are no material factual disputes that pertain to resolution of this issue, the Court will construe the Board's motion as a motion to dismiss under Rule 12(b)(6), which provides for dismissal of actions that fail to state a claim upon which relief can be granted.  Under this standard, this Court must construe the Complaint in favor of Plaintiffs, accept the factual allegations contained in the Complaint as true, and determine whether Plaintiffs' factual allegations present plausible claims.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  The claims must be "plausible" and not merely "conceivable."  *Id.* at 570.

---

[2] The Supreme Court's decision in *Reed Elsevier, Inc. v. Muchnick*, --- U.S. ---, 130 S. Ct. 1237 (2010) (holding that the Copyright Act's registration requirement is a precondition to filing a copyright infringement claim, but does not restrict a federal court's subject-matter jurisdiction with respect to infringement suits involving unregistered works), though not precisely on point, takes a consistent approach insofar as it signals the Court's movement away from consideration of statutory administrative requirements as jurisdictional in nature unless specifically identified as such by Congress.

**B.      Factual and Procedural Background**

Plaintiffs make the following factual allegations in the Complaint:

Plaintiffs are Allen and Jennifer Sagan, residents of Sumner County, Tennessee, and they bring this action individually and on behalf of their minor child, referred to herein as Jane Doe.

Jane Doe has Down syndrome, and during the 2008-2009 school year was a special-needs student at Station Camp Elementary School, a public school that is under the exclusive control of the Sumner County Board of Education.  The Board is the ultimate decision-making body of the Sumner County school system with regard to the employment of teachers and all other policy determinations in the operation of the public schools within Sumner County.

Defendant Donna Weidenbenner is a citizen of Sumner County, Tennessee, and was at all times material to the complaint the "Special Needs Teacher at Station Camp Elementary School."  The Board established the Special Needs Class for the specific purpose of providing an adequate public education for special needs students such as Jane Doe.  Plaintiffs were assured that Weidenbenner had all the necessary qualifications and credentials required for special needs teachers.

During the 2008–2009 academic year, Jane Doe was subjected to physical abuse and outrageous conduct perpetrated by Weidenbenner, including:

> (1) being forcefully pushed into another teacher's classroom in one instance and, unbeknownst to that teacher, left there alone and unattended, where she lay on the floor for at least twenty minutes, terribly distraught and crying uncontrollably;
>
> (2) being subjected to "constant abusive comments" by Weidenbenner;
>
> (3) having Weidenbenner put a fingernail or something else sharp under one of Jane Doe's fingernails for discipline;
>
> (4) being required to smell her own feces if she had a toileting accident;
>
> (5) being pulled forcefully into a standing position, resulting in bruises on her arms; and
>
> (6) being referred to as "a little shit" in her own presence as well as that of her mother and others.

(*See* Compl., Doc. No. 1, at ¶¶ 8–12.)

In paragraph 7 of the Complaint, Plaintiffs assert that "[d]uring the 2008–2009 academic year Jane Doe and other special needs children were subjected to physical abuse and outrageous conduct perpetrated by [Weidenbenner]," including such things as "force feeding the children to the point of

vomiting"; "forcefully shoving children into furniture causing bruises and abrasions"; "kicking and throwing children to the point they cry and become non-responsive and despondent"; and "strapping children to a commode for extended periods of time," among other alleged abusive acts.  (Compl. ¶ 7(a)–(s).)

Plaintiffs allege that these were not "isolated incidents" insofar as Weidenbenner had engaged in similar conduct in prior academic years with other special needs children, but the Board "failed to take such action as to prevent special needs students from the foreseeable and specific danger of harm at the hands of Miss Donna [Weidenbenner]."  (Compl. ¶ 13.)  Reports regarding Weidenbenner's conduct were made to officials and employees of the Board prior to the 2008–2009 academic year but were ignored. Plaintiffs allege that "[o]n one occasion an assistant teacher reported concerns about [Weidenbenner's] behavior but was told to 'mind her own business' and that [Weidenbenner] was the 'expert.'"  (Compl. ¶ 14.)  The Complaint does not indicate when or to whom the assistant teacher's report was made or what type of "concerns" she expressed.  Weidenbenner's conduct, however, was "done openly in the school with no attempt by her to conceal her actions and in front of school officials."  (Compl. ¶ 15.)

According to Plaintiffs, the Board knew or should have known, by and through its employees and agents, of the specific risk of harm to Jane Doe posed by Weidenbenner, "given the number of years she exhibited this conduct and prior reports to officials of same, but took no steps to stop the abuse."  (Compl. ¶ 18.)  Plaintiffs allege the Board failed to train and supervise Weidenbenner in her position as teacher of special-needs children, and failed to properly train and supervise other employees in detecting and reporting the abuse of special needs children.  (Compl. ¶ 21.)  These failures allegedly resulted in physical and emotional injuries to Jane Doe for which she is entitled to compensatory damages for "past and future expenses, past and future physical pain and suffering, mental anguish, and past and future lost capacity for the enjoyment of life."  (Compl. ¶ 22.)

C.    **Analysis and Discussion**

Based upon the factual allegations set forth above, Plaintiffs assert four separate "counts" in their Complaint.  First, in Count I, Plaintiffs aver that Defendant Weidenbenner committed the alleged acts of abuse against Jane Doe under color of state law and by virtue of her authority as a Special Needs Teacher at a public school in Sumner County, and thereby deprived Jane Doe of clearly established rights guaranteed by the First and Fourteenth Amendments to the Constitution, for which 42 U.S.C. §

1983 provides redress. Plaintiffs specifically aver that Weidenbenner's acts deprived Jane Doe of (1) freedom from unreasonable, unjustified and excessive force; (2) liberty and property without due process; (3) freedom from summary punishment; (4) freedom from interference with familial association; and (5) freedom from arbitrary governmental activity which shocks the conscience of a civilized society, thereby causing Jane Doe to sustain injuries and damages that would not otherwise have occurred. (Compl. ¶¶ 23–24.)

Count II is asserted against the Board only and asserts that the Board "permitted, encouraged, tolerated, and knowingly acquiesced to an official pattern, practice or custom of its special needs teachers, and particularly [Weidenbenner], of violating the constitutional rights of students and their families, including Plaintiff's"; that the Board has "vested final policymaking authority with respect to the special education program in [Weidenbenner]" such that Weidenbenner's acts "constitute the official policies, practices and customs of the Defendant School Board, rendering Defendant School Board directly liable for any and all unconstitutional actions committed by [Weidenbenner]"; and that the School Board is directly liable for the Board's policies and customs in effect during the 2008–2009 academic year, which were the underlying cause of Jane Doe's injuries and damages. Plaintiffs further allege that the Board had actual knowledge of Weidenbenner's shocking conduct and failed to take action to prevent her from continuing to prey on disabled students.

In Count III, Plaintiffs aver that they "have a constitutional right of familial association" with their child and to the society and companionship of their child guaranteed by the Fourteenth Amendment to the Constitution but that, as a result of Weidenbenner's abuse and the Board's breach of duties that permitted such abuse, Defendants violated those rights.

Count IV, asserted against "Defendants" generally, purports to state a claim under Title II of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a),[3] based upon Defendants' failure to comply with their duty to provide Jane Doe a "free and appropriate public education" and failure to provide Jane Doe with appropriate classroom facilities and teachers to

---

[3] This section of the Rehabilitation Act provides in pertinent part that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a).

accomplish the mandates of her Individualized Education Plan ("IEP"),[4] thereby violating Jane Doe's rights under the ADA and the Rehabilitation Act and causing injury to Jane Doe. (Compl. ¶¶ 36–43.)

In its Motion to Dismiss, the School Board asserts, first, that all of Plaintiffs' claims are subject to dismissal as a result of Plaintiffs' failure to exhaust administrative remedies as required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* Additionally and alternatively, the Board maintains that (1) Plaintiffs have failed to state a claim for which relief may be granted under § 1983 for deprivation of parental rights guaranteed by the Fourteenth Amendment; (2) the acts alleged in the Complaint, even accepted as true, do not amount to a deprivation of Jane Doe's constitutional rights; and (3) as a matter of law, Plaintiffs have not stated facts that would support a finding that the Board was responsible for any constitutional deprivations that might have occurred.

Defendant Weidenbenner, in her separately filed Motion to Dismiss, incorporates by reference the arguments in the Board's motion and memorandum, but also asserts that (1) the "official capacity" claim against her under the ADA and Rehabilitation Act must be dismissed because an official-capacity claim is essentially the same as suit against the entity by which the individual is employed, and the entity is already named as a defendant; and (2) the ADA and Rehabilitation Act claims against her in her individual capacity must be dismissed for failure to state a claim because there is no individual liability under Title II of the ADA. (*See* Doc. No. 24.)

The Court will address each of the Defendants' arguments in turn.

### (1) Weidenbenner's Motion to Dismiss

The Court notes that Plaintiffs have not addressed Weidenbenner's specific arguments, essentially signaling that they do not contest them. Further, the Court finds that the individual-capacity claims against Weidenbenner under Title II of ADA and § 504 of the Rehabilitation Act must be dismissed with prejudice because there is no individual liability under Title II of the ADA or the Rehabilitation Act. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002) (no individual liability under ADA); *Lee v. Mich. Parole Bd.*, 104 Fed. Appx. 490, 492 (6th Cir. 2004) (no individual liability under § 504 of the Rehabilitation Act); *Hiler v. Brown*, 177 F.3d 542 (6th Cir. 1999) (no individual liability under the

---

[4] An IEP sets forth the educational program to be provided to a special education student to meet his or her unique educational needs and describes the educational plan designed to meet those needs.

Rehabilitation Act); *Pritchard v. S. Co. Servs.*, 102 F.3d 1118, 1119 (11th Cir. 1996), *cert. denied*, 520 U.S. 1274 (1997) (finding no personal liability for supervisors under either the Rehabilitation Act or the ADA). Weidenbenner's motion to dismiss with prejudice the ADA and Rehabilitation Act claims against her in her individual capacity will therefore be granted.

Weidenbenner further argues that the official-capacity claims against her must be dismissed on the basis that a claim against an individual in her official capacity is tantamount to a claim against the employer and that where, as here, the employer is also sued, the official-capacity suit against the employee is simply redundant and may be dismissed. *Cf. Johnson v. Wash. County Career Ctr.*, No. 2:10-CV-076, 2010 WL 2570929 (S.D. Ohio June 22, 2010) (dismissing official-capacity Rehabilitation Act and ADA claims against an individual where the state-entity employer was also named as a defendant) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[T]he real party in interest in an official-capacity suit is the government entity itself and not the named official."); *Von Herbert v. City of St. Clair Shores*, 61 Fed. Appx. 133, 140 (6th Cir. 2003) (dismissing official-capacity claim as redundant and subsumed by claim against the government entity)). Defendants have not voiced any opposition to this argument. The motion to dismiss the official-capacity claims against Weidenbenner will therefore be granted.

### (2) Count III of the Complaint—Alleged Violation of Parental Rights

It is well established that parents have a liberty interest in the care, custody, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (referring to this interest as "perhaps the oldest of the fundamental liberty interests recognized by th[e Supreme] Court"); *see also Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35 (1925) (holding the Fourteenth Amendment prohibits "unreasonably interfer[ing] with the liberty of parents and guardians to direct the upbringing and education of children under their control"); *Barrett v. Steubenville City Schs.*, 388 F.3d 967, 972 (6th Cir. 2004) (noting the fundamental right of parents to raise their child, and to direct their child's education, has been clearly established). It appears equally clear, however, that where there is neither a loss of custody nor any separation between the parents and the child, there is no constitutional violation. *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 590–91 (6th Cir. 2008).

Plaintiffs argue that their association with their child is "already fragile at best" in light of the child's special needs, and that "the extent to which the child has been damaged" and thus "whether or not the

[parental] relationship has been rendered meaningless" is not yet known. Thus, Plaintiffs contend that "any ruling on this issue should be held in abeyance until full and complete medical proof can be presented to the court for thorough deliberation." (Pls.' Mem. Resp., Doc. No. 33, at 11.) Plaintiffs' argument notwithstanding, the Court finds that there are no factual allegations in the Complaint suggesting that Plaintiffs ever were deprived of the right to associate with their child, either temporarily or permanently. Defendants' motion to dismiss this claim (Count III) will be granted pursuant to Rule 12(b)(6), for failure to state a claim for which relief may be granted.

### (3) Exhaustion under the IDEA

The Board asserts that all of Plaintiffs' claims should be dismissed for failure to exhaust administrative remedies under the IDEA. Plaintiffs argue in response that the IDEA is inapplicable in this case and that, even if it were applicable, exhaustion of administrative remedies would have been futile.

The IDEA was enacted to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). One of the primary mechanisms through which special needs children are ensured the receipt of a free appropriate public education ("FAPE") is through the development of an Individualized Education Plan ("IEP"). 20 U.S.C. §§ 1401(14), 1412(4). Further, to effectuate the rights created by the Act, the individual states are required to establish procedures "to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education." 20 U.S.C. § 1415(a). One of those procedures is the opportunity to present complaints "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A). Any complaints must be given an impartial due process hearing, 20 U.S.C. § 1415(f), and if necessary a review by a higher state agency. 20 U.S.C. § 1415(g). Those persons dissatisfied with the results of the administrative hearing and appeal may file suit in state or federal court for judicial review of the administrative decision.[5] However, plaintiffs must exhaust their administrative remedies before filing a

---

[5] The standard of a district court's review of an administrative decision under the IDEA is not as deferential as the typical "substantial evidence in the record" standard. The IDEA's provision governing federal court review of state administrative decisions states: "[T]he court (i) shall receive the records of

civil action to enforce their rights under the IDEA.  20 U.S.C. § 1415(l).

The provision requiring exhaustion is very broad, as it covers not only claims brought under the IDEA, but also any claims that *could have* been brought under the IDEA:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section[6] shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

*Id.* (citations omitted).

In this case, Plaintiffs do not assert any claims directly under the IDEA, and they seek compensatory damages which are not available under the IDEA.  Regardless of how a claim is couched, however, any claim that relates directly to a student's access to a FAPE is subject to the exhaustion requirement.  *Long v. Dawson Springs Indep. Sch. Dist.*, 197 Fed. Appx. 427, 434 (6th Cir. 2006). Further, a claim for damages, standing alone, does not excuse a plaintiff from exhausting her administrative remedies.  *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 916–17 (6th Cir. 2000). Instead, "when a plaintiff has alleged injuries that could be redressed to any degree by the IDEA's procedures and remedies, exhaustion of those remedies is required."  *S.E. v. Grant County Bd. of Educ.*, 544 F.3d 633, 642 (6th Cir. 2008) (citation omitted), *cert. denied* 129 S. Ct. 2075 (2009).  However, "parents may bypass the administrative process where exhaustion would be futile or inadequate."  *Honig v. Doe*, 484 U.S. 305, 327 (1988).

Here, Plaintiffs assert both that exhaustion is not required and that, even if it were, exhaustion would have been futile.  In support of the futility argument, they point out that the Sixth Circuit has expressed its understanding that the IDEA is "not well-suited to remedying past instances of physical

---

the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C).  Courts have interpreted this standard of review as "modified de novo."  *Burilovich v. Bd. of Educ. of Lincoln Consol. Schs.*, 208 F.3d 560, 565 (6th Cir. 2000) (citing *Renner v. Bd. of Educ.*, 185 F.3d 635, 641 (6th Cir. 1999); *Metro. Bd. of Pub. Educ. v. Guest*, 193 F.3d 457, 463–64 (6th Cir. 1999)).

[6] Subsections (f) and (g) of § 1415 pertain to administrative remedies, specifically, the procedural requirements pertaining to the "[i]mpartial due process hearing" and appeal of the decision rendered at that hearing to the state educational agency.

injuries" or providing relief for "retrospective injuries." *Covington*, 205 F.3d at 918. Thus, it would be futile for a plaintiff to have to exhaust administrative remedies where "'the condition creating the damage has ceased,' and there is no equitable relief that would make [plaintiff] whole." *Id.* (quoting *Plasencia v. California*, 29 F. Supp. 2d 1145, 1152 (C.D. Cal. 1998)); *cf. Lopez v. Metro. Gov't of Nashville & Davidson County*, 646 F. Supp. 2d 891, 908 (M.D. Tenn. 2009) (holding that claims seeking redress for injuries resulting from an alleged rape, a "noneducational injur[y]," did not require exhaustion); *M.Y. v. Special Sch. Dist. No. 1*, 519 F. Supp. 2d 995, 1002 (D. Minn. 2007) (holding that exhaustion under the IDEA was not required where the plaintiff sought to redress injuries resulting from an alleged sexual assault, not from her deprivation of special education transportation); *Padilla v. Sch. Dist. No. 1*, 233 F.3d 1268, 1274 (10th Cir. 2000) (stating that exhaustion was not required where the plaintiff sought redress for severe physical injuries since "prospective educational benefits" could not "possibly begin to assuage Plaintiff's severe physical, and completely non-educational, injuries").

Count IV of Plaintiffs' Complaint is specifically premised upon Defendants' alleged failure to comply with their duty to provide Jane Doe a FAPE and failure to provide Jane Doe with appropriate classroom facilities and teachers to accomplish the mandates of her IEP, thereby causing injury to Jane Doe. (Compl. ¶¶ 36–43.) Although Plaintiffs purport to state this claim under the Rehabilitation Act and the ADA, other courts have construed similar claims as falling within the purview of the IDEA. For instance, in *Waterman v. Marquette-Alger Intermediate Sch. Dist.*, 739 F. Supp. 361 (W.D. Mich. 1990), the plaintiffs were six special-education students who allegedly suffered inappropriate discipline ranging from bodily humiliation and the withholding of food and medicine to repeated physical assault by two defendant teachers. The plaintiffs asserted causes of action under the IDEA (or EHA), § 504 of the Rehabilitation Act, 42 U.S.C. § 1983, and state tort law. Upon motion by the defendants, the court held that the plaintiffs' failure to exhaust their administrative remedies required dismissal of the IDEA/EHA claims, and also required dismissal without prejudice of the plaintiffs' other claims pending exhaustion. The district court stated:

> No doubt exists that EHA plaintiffs must exhaust their adequate and available state and local administrative remedies before seeking relief in state or federal court. Additionally, EHA exhaustion must occur before plaintiffs may file an action under any other federal law seeking relief *that is also available* under the EHA. In the present case, plaintiffs' actions under section 504 of the Rehabilitation Act and section 1983 seek relief that is also available under the EHA. This is because all of plaintiffs' claims arise from

defendants' allegedly excessive disciplinary acts and practices, and complaints about classroom discipline of special education students are cognizable under the EHA. . . . Because the disciplinary measures complained of here are within the purview of the EHA, the plaintiffs are required to present their complaints concerning such disciplinary action according to the procedures set forth by the [EHA], whether or not they bring additional causes of action "under the Constitution, title V of the Rehabilitation Act of 1973, or other federal statutes protecting the rights of handicapped children and youth," 20 U.S.C. § 1415[l]. Congress has determined that the agency charged with developing and instituting a child's individualized educational program must be given the first opportunity to address matters relating to that educational program.

Accordingly, none of plaintiffs' claims may go forward in this court unless they have exhausted the EHA administrative process. The fact that plaintiffs seek a particular type of relief, money damages, not available under EHA . . . , is immaterial. To hold otherwise would allow EHA plaintiffs to frustrate Congressional purpose by bypassing the administrative process in virtually every case containing EHA, section 504, or section 1983 damages claims.

*Id.* at 364–65 (internal citations and quotation marks omitted).

Likewise in *Franklin v. Frid*, 7 F. Supp. 2d 920 (W.D. Mich. 1998), the plaintiffs asserted civil rights violations and state-law tort claims based upon school officials' allegedly depriving their handicapped son of a FAPE, based on the conduct of a special assistant assigned to work with him under his IEP. The assistant allegedly "intentionally humiliated and tormented [the minor] by poking him to get his attention, taking away utensils, and taunting him; . . . intentionally hit and slapped [him] without justification; and . . . verbally abused [him]." *Id.* at 922. The court stated:

The question then is whether the Franklins' claim arises under the IDEA. The Franklins argue that their claim is based upon a violation of constitutional rights independent of any rights arising under the IDEA. They assert that their claim does not concern the adequacy of Craig's IEP, with which they claim they were satisfied, but Frid's behavior toward Craig, which they characterize as physically and verbally abusive, controlling, and demeaning. The Franklins contend that they are not required to comply with the administrative process under the IDEA to vindicate constitutional rights which have nothing to do with an IEP simply because Craig is a disabled child covered by the IDEA.

The Court does not disagree that, as a broad proposition, a disabled child who asserts a constitutional claim having some relationship to education but no nexus to the IDEA is not required to pursue administrative remedies under the IDEA before filing suit under § 1983. For example, a disabled child who is sexually abused or severely beaten by a teacher or school official—acts having no relationship to the appropriate education of a disabled child—would not come within the purview of the IDEA. On the other hand, where the alleged acts constitute discipline and not random acts of violence, courts have generally held that claims based upon such conduct fall within the IDEA.

*Id.* at 924–25 (citations omitted).

In sum, although Plaintiffs proceed under the auspices of the ADA, the Rehabilitation Act, and § 1983, the IDEA nonetheless requires them to first exhaust its administrative procedures and remedies

prior to commencing a suit under the ADA or other statutory schemes if they are "seeking relief that is also available under" the IDEA. 20 U.S.C. § 1415(l). The Seventh Circuit and the Tenth Circuit have both expressly stated that "'available' relief means "'relief for the events, condition, or consequences of which the person complains, not necessarily relief of the kind the person prefers,' or specifically seeks." *Padilla*, 233 F.3d at 1274 (quoting *Charlie F. v. Bd. of Educ.*, 98 F.3d 989, 992 (7th Cir.1996)). Thus, the question facing this Court in determining whether a plaintiff must utilize the IDEA's administrative procedures "relates to the source and nature of the alleged injuries for which he or she seeks a remedy, not the specific remedy itself." *Id.* (citing *Hayes v. Unified Sch. Dist. No. 377*, 877 F.2d 809, 812 (10th Cir. 1989)). In other words, the Court must ask whether the Plaintiffs' alleged injuries could be redressed to any degree by the IDEA's administrative procedures and remedies. If so, exhaustion of those remedies is required. If not, the claim necessarily falls outside the IDEA's scope, and exhaustion is unnecessary. Where the IDEA's ability to remedy a particular injury is unclear, exhaustion should be required in order to give educational agencies an initial opportunity to ascertain and alleviate the alleged problem. *See, e.g.*, *Charlie F.*, 98 F.3d at 992, 993.

So, for example, in *Padilla*, the plaintiff sought damages to redress a fractured skull and other physical injuries; the court held that exhaustion was not required because the injuries were "noneducational" and would not be redressed by the IDEA. *Cf. Witte v. Clark County Sch. Dist.*, 197 F.3d 1271, 1275–76 (9th Cir. 1999) (holding that exhaustion was not required where the plaintiff was seeking "only monetary damages" for alleged "physical abuse and injury" and "all educational issues already have been resolved to the parties' mutual satisfaction"; noting that "[t]he remedies available under the IDEA would not appear to be well suited to addressing past physical injuries adequately; such injuries typically are remedied through an award of monetary damages").

In the present case, the behavior for which Jane Doe and her parents seek redress includes being left alone and unattended in a classroom for an indeterminate period of time; being subjected to verbal abuse; being inappropriately disciplined by having something sharp pressed under her fingernails and being required to smell her own feces if she had a toileting accident; and being pulled forcefully to a standing position, resulting in bruises on her arms. These incidents allegedly resulted in physical injury, apparently not severe, and mental and emotional injuries, which Plaintiffs allege to be severe. Moreover,

at least some of these alleged acts "constitute discipline and not random acts of violence," and "courts have generally held that claims based upon such conduct fall within the IDEA." *Franklin,* 7 F. Supp. 2d at 925.

Even though Weidenbenner has been removed from Jane Doe's school, and notwithstanding the fact that the Plaintiffs do not profess a problem with her current IEP, the IDEA was intended to remedy precisely this type of situation—a situation which resulted in a set-back of a student's educational progress resulting from inappropriate discipline by a teacher.

The case of *Charlie F. v. Board of Education*, 98 F.3d 989 (7th Cir. 1996), is particularly instructive in this regard. In that case, plaintiffs sought money damages on behalf of their minor child, a disabled student, from his teacher, school district and principal under § 1983, Rehabilitation Act, ADA and state tort law based on the effects of his teacher's allegedly misconceived educational strategy. The teacher had invited students to vent their feelings about certain topics, and one topic about which they frequently "vented" was the plaintiff child, which allegedly led to fist fights, humiliation, loss of confidence and self-esteem, and disruption of plaintiff's educational progress. When the student's parents eventually found out about the venting, they moved him to a different school. At the time they filed suit, they professed to be satisfied with their son's current IEP and placement. When the defendants sought dismissal based on failure to exhaust administrative remedies, plaintiffs asserted they did not seek relief under the IDEA because they sought monetary damages, which are not authorized under the IDEA. The Seventh Circuit did not find that fact dispositive:

> Consider this from another angle. Why do Charlie's parents want money? Presumably at least in part to pay for services (such as counseling) that will assist his recovery of self-esteem and promote his progress in school. Damages could be measured by the cost of these services. Yet the school district may be able (indeed, may be obliged) to provide these services in kind under the IDEA. If it turns out that the school is not obliged to provide such services, that may be because Charlie's parents have exaggerated what happened in fourth grade, the consequences of those events, or both. In other words, the educational professionals and hearing officers who evaluate claims under the IDEA may conclude (a) that adequate remedial services can be provided, or (b) that Charlie does not today require services. The first outcome would show that relief is available under the IDEA; the second would provide information relevant to Charlie's claims under statutes other than the IDEA. In either event, pursuit of the administrative process would be justified. Charlie would not get the kind of relief the complaint demands, but this is not what § 1415[l] says. We read "relief available" to mean relief for the events, condition, or consequences of which the person complains, not necessarily relief of the kind the person prefers.

*Id.* at 992. Further, the court noted that the term "related services" is defined by the IDEA to include,

among other things:

> such developmental, corrective, and other supportive services (including . . . psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, counseling services, including rehabilitation counseling . . . ) as may be required to assist a child with a disability to benefit from special education[.]

20 U.S.C. § 1401(26)(A).  The court continued:

> Charlie's parents believe that his current educational program is apt, which they think means that any psychological services would not be "required to assist [Charlie] to benefit from special education".  Yet the complaint they filed on his behalf deals with acts that have both an educational source and an adverse educational consequence; the complaint contends that his education has suffered as a result of the events in fourth grade; if he is doing fine in school today, then it is hard to see what this case is about.  It would be odd to award damages because of deeds with so little educational effect that no ongoing steps to overcome them are warranted—and again we are unwilling to allow parents to opt out of the IDEA by proclaiming that it does not offer them anything they value, when the school district professes willingness to take corrective steps (if the facts justify them, a vital qualifier).
>
> . . . .
>
> Perhaps Charlie's adverse reaction to the events of fourth grade cannot be overcome by services available under the IDEA and the regulations, so that in the end money is the only balm.  But parents cannot know that without asking, any more than we can.  Both the genesis and the manifestations of the problem are educational; the IDEA offers comprehensive educational solutions; we conclude, therefore, that at least in principle relief is available under the IDEA.

*Id.* at 992–93.  The court remanded the matter with instructions to dismiss for failure to exhaust administrative remedies.  *Id.* at 993.

Pursuant to the foregoing analysis, this Court finds that Count IV of the Complaint, purporting to set forth claims under the ADA and the Rehabilitation Act, must be dismissed without prejudice based upon the Plaintiffs' failure to exhaust their administrative remedies.  The claim is not exempt from the exhaustion requirements under the IDEA, nor have Plaintiffs demonstrated that exhaustion would in any sense be futile, regardless of the fact that Weidenbenner is no longer teaching at Jane Doe's school and the child is apparently no longer being subject to the abuse allegedly suffered under Weidenbenner.[7]

The remaining question is whether the other claims in the Complaint, those set forth in Counts I

---

[7] Having dismissed without prejudice the claims asserted in Count IV of the Complaint, the Court does not reach Defendants' argument that the Rehabilitation Act claim should be dismissed with prejudice on the grounds that Plaintiffs have not alleged facts sufficient to show "deliberate indifference," which Defendants assert is required in order to establish intentional discrimination under the statute.  Because, as set forth below, the Court finds herein that Plaintiffs have alleged facts which, if proved, would allow a jury to find the Board acted with deliberate indifference, Defendants would not prevail on their motion to dismiss Plaintiffs' § 504 claim with prejudice.

and II, are likewise subject to dismissal without prejudice pending exhaustion.  There is some authority to suggest that these claims too should be dismissed, as indicated above, but this Court does not find that dismissal is appropriate under the circumstances presented here.  The relevant provision of the IDEA, quoted in full above, indicates that the IDEA "shall not be construed" to limit a plaintiff's right to recover under other federal laws, including the Constitution, the ADA, the Rehabilitation Act, or civil rights acts, "except that before the filing of a civil action under such laws seeking relief *that is also available under this subchapter*," the exhaustion procedures set forth in the IDEA must be followed.  20 U.S.C. § 1415(l) (emphasis added).

So, are the injuries and the remedies sought in Counts I and II of the Complaint are the type of injuries redressed, in any sense, by the IDEA?  Plaintiffs' claims concern the alleged unlawful and unreasonable use of force, as well as the alleged negligence of the Board in failing to detect or prevent the abuse allegedly perpetrated by Weidenbenner.  The Court construes these claims as arising from non-educational injuries, irrespective of the fact that they occurred in an educational setting and were allegedly perpetrated by educators against a student.  If Jane Doe were *not* a disabled student, there would be no administrative barrier to her pursuit of these claims.  Moreover, if the Plaintiffs alleged more severe physical injuries, it is clear under the available case law that claims related to such physical injuries would not be barred.  Although Jane Doe's physical injuries were apparently not severe and the Plaintiffs *also* assert claims for which the IDEA does provide relief, the Court believes it would be unreasonable to require that the non-IDEA claims be placed on hold during the pendency of a potentially lengthy and cumbersome administrative process.  In short, this Court cannot construe the claims asserted in Counts I and II as seeking relief "that is also available" under the IDEA, as they are not directly related to the school's provision of a FAPE to her.  The motion to dismiss Counts I and II based upon failure to exhaust administrative remedies will therefore be denied.

### *(4)     Whether Plaintiffs Have Stated Valid Claims for Constitutional Violations by Weidenbenner*

To reiterate, the injuries Plaintiffs allege Weidenbenner inflicted on their child include leaving her alone and unattended in a classroom for at least twenty minutes, causing her to become quite distraught; repeatedly subjecting her to verbal abuse; inappropriately disciplining her by pushing something sharp under her fingernails; requiring her to smell her own feces when she had a toileting accident; and

forcefully pulling her to a standing position, resulting in bruises on her arms.[8]  Plaintiffs allege that Weidenbenner's acts deprived Jane Doe of clearly established rights guaranteed by the First and Fourteenth Amendments to the Constitution, for which redress is created by 42 U.S.C. § 1983.

As an initial matter, to the extent Plaintiffs are attempting to state a claim on behalf of Jane Doe based on some deprivation of her right to "familial association" under the First Amendment, that claim is subject to dismissal on the same grounds as the claim asserted by the parents, as discussed in Part I.C(1), above.

With respect to the Fourteenth Amendment claims, it is true, as Defendants point out, that not every tort rises to the level of a constitutional violation, *Paul v. Davis*, 424 U.S. 693, 699–701 (1976), and not every deprivation of a liberty or property right requires a pre-deprivation hearing or federal remedy. *Ramsey v. Bd. of Educ.*, 844 F.2d 1268, 1273 (6th Cir. 1988).  The Supreme Court has recognized that "corporal punishment in public schools implicates a constitutionally protected liberty interest," specifically, an interest in procedural due process, but the Court also held "that the traditional common-law remedies are fully adequate to afford due process."  *Ingraham v. Wright*, 430 U.S. 651, 672 (1977).  The Supreme Court has not reached the question of whether punishment inflicted in the educational context may implicate *substantive* due process rights, but the Sixth Circuit, along with most of the other Circuit Courts of Appeals, has found that it can.  *Webb v. McCullough*, 828 F.2d 1151, 1159 (6th Cir.1987).

The seminal case addressing excessive force in public schools is *Hall v. Tawney*, 621 F.2d 607 (4th Cir. 1980).  *See Saylor v. Bd. of Educ. of Harlan County*, 118 F.3d 507, 514 (6th Cir. 1997); *Webb*, 828 F.2d at 1158; *see also Gottlieb v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 173 (3d Cir. 2001) ("*Hall* now provides the most commonly cited test for claims of excessive force in public schools.").  In *Hall*, the minor plaintiff was repeatedly paddled and was subsequently taken to the emergency room where she was admitted and kept for ten days for treatment for traumatic injury to her left hip, thigh and buttock.

---

[8] In paragraph 7 of the Complaint, Plaintiffs allege that "Jane Doe and other special needs children were subjected to physical abuse and outrageous conduct perpetrated by [Weidenbenner]" and that "instances of [Weidenbenner's] abuse" include a catalog of alleged inappropriate behavior by Weidenbenner. Although Plaintiffs, in opposing Defendants' motion to strike, point out that this paragraph alleges that Jane Doe was subject to some of the enumerated abuses, the Court finds that the allegations are not specific enough to be construed as factual averments that Weidenbenner perpetrated any of the acts alleged in paragraph 7 against Jane Doe directly.  Consequently, those allegations are not relevant to the threshold question of whether *Jane Doe* suffered injuries that rise to the level of a constitutional violation.

She received treatment from specialists for possible permanent injuries to her lower back and spine. *Hall*, 621 F.2d at 614. In finding that a substantive due process claim existed, the United States Court of Appeals for the Fourth Circuit stated:

> In the context of disciplinary corporal punishment in the public schools, we emphasize once more that the substantive due process claim is quite different than a claim of assault and battery under state tort law. In resolving a state tort claim, decision may well turn on whether "ten licks rather than five" were excessive . . . so that line-drawing this refined may be required. But substantive due process is concerned with violations of personal rights of privacy and bodily security of so different an order of magnitude that inquiry in a particular case simply need not start at the level of concern these distinctions imply. As in the cognate police brutality cases, the substantive due process inquiry in school corporal punishment cases must be *whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.* Not every violation of state tort and criminal assault laws will be a violation of this constitutional right, but some of course may.

*Hall*, 621 F.2d at 613 (emphasis added; citations omitted).

The Sixth Circuit expressly adopted this rationale in *Webb*, 828 F.2d at 1158, in which a high school girl on a school trip locked herself in the bathroom after the principal informed her that he was going to send her home upon his discovery of a boy and alcohol in her room. *Id.* at 1153–54. The principal became angry when he realized the girl had locked herself in the bathroom. He attempted to "jimmy" the lock, but when that failed he slammed into the door with his shoulder. The door gave way knocking the girl against the wall and then onto the floor. He grabbed her from the floor, threw her against the wall and slapped her. *Id.* at 1154.

The Sixth Circuit, quoting from *Hall*, determined that a substantive due process claim existed. It reversed and vacated the district court's order granting the defendant's motion for summary judgment, stating:

> Because the alleged blows were not struck in the school context, where the need for immediate disciplinary control . . . is at its greatest, because [the principal] was *in loco parentis* to [the plaintiff], and because it is possible that the blows were not disciplinary in nature, a trier of fact could find that under the circumstances, [the principal's] need to strike [the plaintiff] was so minimal or non-existent that the alleged blows were a brutal and inhumane abuse of [the principal's] official power, literally shocking to the conscience.

828 F.2d at 1159. The Court also noted that the record did not reveal any reason for the blows or that "the blows arose other than in anger or from malice." *Id.* at 1158.

The motion before the Court is a motion to dismiss, not a motion for summary judgment, and

discovery is ongoing at this time, particularly with regard to the injuries suffered and the basis for Weidenbenner's actions. In light of the Sixth Circuit's analysis in *Webb*, this Court finds that Plaintiffs have adequately stated a claim for constitutional violations based on at least some of Weidenbenner's alleged actions against Jane Doe. The fact that Jane Doe is a special-needs child who, by definition, is more vulnerable than a non-special-needs child of the same age, places her in a somewhat unique relationship with her teachers. They do not necessarily act *in loco parentis,* but their level of responsibility for her well being is inevitably heightened. Further, although it is possible that some of the actions allegedly taken by Weidenbenner were pedagogical and disciplinary in nature, this Court cannot imagine any legitimate reason for any teacher ever to place "something sharp"—even if just her fingernails—under a child's fingernails. In sum, because Jane Doe is a special-needs child and because, as in *Webb*, "it is possible that the [actions] were not disciplinary in nature, a trier of fact could find that under the circumstances, [the teacher's] need to [discipline Jane Doe]] was so minimal or non-existent that the alleged [actions] were a brutal and inhumane abuse of [the teacher's] official power, literally shocking to the conscience." *Webb*, 828 F.2d at 1159.

It is nonetheless clear, however, that "[v]erbal abuse is not normally a constitutional violation." *Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000); *see also Johnson v. Dallatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding verbal abuse does not give rise to Eighth Amendment claim). Similarly, forcing the child to smell her own feces, while undoubtedly an unpleasant experience, did not cause physical injury and is not the type of behavior courts have found could shock the conscience. Plaintiffs' allegations that Weidenbenner constantly subjected Jane Doe to verbal abuse and forced her to smell her own feces after a toileting accident, even if they might give rise to a state tort claim, do not support a claim for constitutional violations.

The Court will therefore grant in part and deny in part Weidenbenner's motion to dismiss the § 1983 claims asserted directly against her. Specifically, Plaintiffs have failed to state a constitutional claim based upon Weidenbenner's alleged repeated verbal abuse or forcing Jane Doe to smell her own feces. The Court will permit discovery to go forward regarding the other allegations, and Defendants will have the opportunity to address again at the summary judgment stage the question of whether Plaintiffs can actually prove constitutional violations.

**(5)    Whether Plaintiffs Have Stated Valid Claims for Constitutional Violations Against the Sumner County Board of Education**

The Supreme Court has held that municipalities and local government entities are "persons" within the meaning of § 1983 and may be sued for relief under the statute.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  However, a municipality may not be held liable under § 1983 under a theory of *respondeat superior*.  *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005) (citing *Monell*, 436 U.S. at 691).  Rather, in order to state a civil rights claim against a local governmental entity such as a school board, a plaintiff must establish that (1) she suffered a deprivation of a constitutionally protected interest; and (2) the deprivation was actually caused by an official policy, custom or usage of the local governmental entity.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see id.* at 690 (stating a municipality may be held liable only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury").

The Supreme Court has indicated that a "custom," to qualify as such, must "be so permanent and well settled as to constitute a custom or usage with the force of law."  *Monell*, 436 U.S. at 691.  The Sixth Circuit has recognized that "[t]here are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom.  The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations."  *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.) (citations omitted), *cert. denied*, 546 U.S. 814 (2005).  Defendants here seek dismissal of the constitutional claims against the Board on the basis that Plaintiffs have not alleged facts that would establish any constitutional deprivation caused by an official custom or policy of the Board.  Plaintiffs contend that they have alleged sufficient facts to establish the existence of an unconstitutional policy or custom, specifically a policy of inadequate training or supervision.  Plaintiffs also argue that Weidenbenner had final policymaking authority to act in her classroom and that she was thus authorized to act on behalf of Sumner County.  Plaintiffs expressly disavow an intent to state a claim based upon a "custom of tolerance or acquiescence of [sic] federal rights violations."  (Doc. No. 33, at 19–20.)

> ### a.     Plaintiffs Have Stated a Claim against the Board Based upon Failure to Train or Supervise.

Liability based on failure to train or supervise will exist only if a plaintiff can prove that a municipality's failure to train its employees in a relevant respect "reflects deliberate indifference to the constitutional rights of its inhabitants." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). The standard of "deliberate indifference" is a stringent one and requires proof that the defendants "disregarded a known or obvious consequence" of their actions. *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410 (1997). Under that standard, the plaintiff must establish that the governmental entity was aware of the unconstitutional acts of its employees and failed to respond. *City of Canton*, 489 U.S. at 390–91. As the Supreme Court has explained:

> [I]t may happen that in light of the duties assigned to specific . . . employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*Id.* at 390.

Thus, to establish an unconstitutional municipal policy or custom based upon a failure to train or supervise, Plaintiffs must show:

> (1) training or supervision that was inadequate under the circumstances; (2) the municipality's deliberate indifference; and (3) a causal link between the municipality's failure to train or supervise and the alleged constitutional violation.

*Milligan v. United States*, 644 F. Supp. 2d 1020, 1039–40 (M.D. Tenn. 2009) (footnote and citations omitted). Plaintiffs must also show "prior instances of unconstitutional conduct demonstrating that the [Board] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir.), *cert. denied*, 546 U.S. 1075 (2005).

In the present case, for purposes of Defendants' motion to dismiss, it appears that Plaintiffs have alleged facts that support all the requisite elements of a claim based upon failure to train or supervise. First, as discussed above, they have adequately alleged that Jane Doe suffered a deprivation of a constitutionally protected interest. In addition, Plaintiffs allege that numerous acts of abuse were committed openly by Weidenbenner over the course of more than one academic year and that reports of

abuse made to Board officials were ignored.  Plaintiffs contend based upon these alleged facts that the School Board knew or should have known about Weidenbenner's abusive behavior and that such abuse posed a specific risk to Jane Doe, and that Jane Doe's injuries were caused by a failure to properly train and supervise other employees in the detection and reporting of abuse of special-needs children. (Compl. ¶¶ 7–22.)

The Court construes these allegations as adequately stating facts which, if proved, would permit a jury to conclude that the Board's training of other teachers in detecting and reporting abuse was inadequate under the circumstances; that the Board's failure to recognize or respond to reports of abuse amounted to deliberate indifference; and that there is a causal link between the municipality's failure to train or supervise and the alleged constitutional violation.  *Milligan*, 644 F. Supp. 2d at 1039–40. Defendants' motion to dismiss the failure to train/supervise claim asserted against the School Board will therefore be denied.

> **b.      Plaintiffs Have Not Stated a Claim against the Board Based upon Weidenbenner's Actions Alone.**

In general, a plaintiff cannot rely on the actions of an individual employee in order to impose liability on a municipality, because *respondeat superior* liability is not contemplated by § 1983.  *Monell*, 436 U.S. at 691.  Plaintiffs allege, however, that the Board vested Weidenbenner with final policy-making authority such that the Board may be directly liable based on her acts alone.  Defendants argue in their motion that state law determines who is an official with policy-making authority, *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989), and that, in Tennessee, public school teachers are not policy-making officials.  Plaintiffs, citing *City of St. Louis v. Prapotnik*, 485 U.S. 112, 123 (1988), respond that the Board "ratified" Weidenbenner's conduct by giving her full authority to conduct her classes without any supervision and by telling other teachers who made reports of abuse by Weidenbenner that they should "mind their own business" since Weidenbenner was the "expert."[9]  (Doc. No. 33, at 20.)

In the case cited by Plaintiffs, however, the Supreme Court simply reconfirmed that (1)

---

[9] Plaintiffs also argue that a government entity's liability may be established where "a final decision maker is used as the 'cat's paw' in a subordinate's retaliatory scheme."  (Doc. No. 33, at 21 (citing *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999).)  Plaintiffs clearly have not alleged the existence of any "retaliatory scheme," and the Court finds it unnecessary to address this irrelevant and groundless argument.

"municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible"; (2) "only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability"; and (3) "whether a particular official has 'final policymaking authority' is a question of state law." *Prapotnik*, 485 U.S. at 123. With respect to this latter proposition, the Court recognized that "special difficulties can arise when it is contended that a municipal policymaker has delegated his policymaking authority to another official." *Id.* at 126 (citing *Pembaur*, 475 U.S. at 482–83 & n.12). The mere exercise of discretion, however, cannot give rise to a constitutional violation; otherwise "the result would be indistinguishable from *respondeat superior* liability." *Id.* Further, where it is necessary to distinguish between discretion and authority, the rule is that "the authority to make municipal policy is necessarily the authority to make final policy." *Id.* at 127 (citations omitted). Thus,

> [w]hen an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality. Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

*Id.*

Here, it is clear that, under Tennessee law, classroom teachers have no policy-making authority with respect to special education. They merely participate in the development of students' IEPs and exercise some discretion in implementing those IEPs in the classroom. Plaintiffs have not alleged that Weidenbenner's alleged abuse conformed to Jane Doe's IEP, and it would be unreasonable to presume that the Board actually knew about and approved Weidenbenner's abusive acts so as to render such abuse "official policy" chargeable to the municipality. Plaintiffs' claims against the School Board based solely upon Weidenbenner's acts are subject to dismissal on the grounds that Weidenbenner is not an official policy maker and Plaintiffs have not alleged facts that would plausibly support a claim that the School Board ratified her acts thereby rendering them acts taken pursuant to official policy.

### (6) *Whether a "Special Relationship" Existed between the Board and Jane Doe*

As an alternative basis for a finding that the School Board is directly liable for injuries to Jane Doe caused by Weidenbenner, Plaintiffs allege that a "special relationship" existed between Jane Doe and the

Board such that the Board had an affirmative constitutional duty to protect Jane Doe from allegedly foreseeable dangers posed by Weidenbenner. (Compl. ¶ 29(i).) Defendants seek dismissal of any claim based upon a purported "special relationship." Plaintiffs defend the existence of such a relationship by referring to the Supreme Court's decision in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), which Plaintiffs contend "enlightens us to the two avenues available to children, such as [Jane Doe], for imposing a duty or liability upon the state for just this purpose," that is, the "special relationship" exception and the "state-created danger" exception. (Doc. No. 33, at 23 (citing *DeShaney*, 489 U.S. at 199–201).)

*DeShaney*, however, does not remotely stand for the proposition for which Plaintiffs cite it. Rather, *DeShaney* held generally that the state has no obligation to protect citizens from dangers posed by a private citizen. It noted that prior cases had established that, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Id.* at 199–200 (referring to *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976) (recognizing that the Eighth Amendment's prohibition against cruel and unusual punishment requires the State to provide adequate medical care to incarcerated prisoners); *Youngberg v. Romeo*, 457 U.S. 307, 314–25 (1982) (holding that substantive due process requires the state to provide involuntarily committed mental patients with such services as are necessary to ensure their "reasonable safety")). The Court specifically recognized that under *state tort law*, the State might have acquired a duty to continue to protect the plaintiff since it had once undertaken to do so, but that "not every tort committed by a state actor" becomes a constitutional violation. *DeShaney*, 489 U.S. at 201–02.

The opinion also contains a passing reference to the fact that the state "concededly played no part in" creating the danger to which the minor child was exposed, but this Court does not read that dictum as establishing an avenue of constitutional liability on the part of the state. *Cf. Vernonia Sch. Dist. v. Acton*, 515 U.S. 646, 655 (1995) ("[W]e do not, of course, suggest that public schools as a general matter have such a degree of control over children as to give rise to a constitutional 'duty to protect' . . . ." (citing *DeShaney*, 489 U.S. at 200)). Further, virtually every federal court to have faced the issue— including the Sixth Circuit—has held that, because parents still maintain primary responsibility for the

child, compulsory school attendance does not create the sort of special relationship that would trigger heightened protection under the Due Process Clause.  *See Doe v. Claiborne County*, 103 F.3d 495, 510 (6th Cir. 1996) ("Although, clearly, a school system has an unmistakable duty to create and maintain a safe environment for its students as a matter of common law, its *in loco parentis* status or a state's compulsory attendance laws do not sufficiently 'restrain' students to raise a school's common law obligation to the rank of a constitutional duty.").  *Accord Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d 1412, 1415 (5th Cir. 1997) (en banc); *Wyke v. Polk County Sch. Bd.*, 129 F.3d 560, 569 (11th Cir. 1997); *Dorothy J. v. Little Rock Sch. Dist.*, 7 F.3d 729, 732 (8th Cir. 1993); *Maldonado v. Josey*, 975 F.2d 727, 731 (10th Cir. 1992), *cert. denied*, 507 U.S. 914 (1993); *D.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1372 (3d Cir. 1992) (en banc), *cert. denied*, 506 U.S. 1079 (1993) ; *J.O. v. Alton Cmty. Unit Sch. Dist. 11*, 909 F.2d 267, 272 (7th Cir. 1990).

The Court finds that Plaintiffs' § 1983 claim based upon the purported existence of a "special relationship" is subject to dismissal.

## II.     DEFENDANTS' MOTION TO STRIKE

As previously stated, paragraph 7 of the Complaint includes allegations that "[d]uring the 2008–2009 academic year Jane Doe and other special needs children were subjected to physical abuse and outrageous conduct perpetrated by [Weidenbenner]," including such things as "force feeding the children to the point of vomiting"; "forcefully shoving children into furniture causing bruises and abrasions"; "kicking and throwing children to the point they cry and become non-responsive and despondent"; and "strapping children to a commode for extended periods of time," among other alleged abusive acts.  (Compl. ¶ 7(a)–(s).)  Defendants seek to strike this paragraph from the complaint on the basis that (1) these allegations are not made with reference to Jane Doe specifically; (2) the allegations were only intended to prejudice Defendants; and (3) Plaintiffs lack standing to base any claims upon injuries inflicted by Weidenbenner on non-parties to this suit.

The Court notes, first, that the Complaint indicates that Jane Doe is included among the other special-needs children who were allegedly subjected to the forms of abuse enumerated in paragraph 7. Plaintiffs allege in their response to Defendants' motion that Jane Doe was subject to "some of the allegations listed [in paragraph 7] are applicable to [Jane Doe]."  (Doc. No. 33, at 21.)  As suggested in

note 8 above, the Court finds that the allegations in paragraph 7 amount to nothing more than speculation that Jane Doe *might* have been the victim of some of the abuse alleged in that paragraph. The paragraph is insufficiently specific to constitute an allegation that Jane Doe was actually subject to any of the enumerated abuses.

However, Plaintiffs further contend that the actions enumerated in paragraph 7 were performed openly and in plain view of school officials; were the subject of numerous complaints over several years; and were actions that the School Board either knew about or should have received notice about. As such, the allegations are relevant to Plaintiffs' contention that the School Board acted with deliberate indifference to the welfare of Jane Doe, among other students, when it failed to investigate the complaints against Weidenbenner and failed to adequately train other teachers and officials in the detection and prevention of abuse, specifically the abuse of special-needs children.

The Court agrees. The allegations are potentially relevant to Plaintiffs' claims against Weidenbenner based upon constitutional injuries inflicted on Jane Doe, and are relevant to Plaintiffs' § 1983 claims against the Board, as discussed above in connection with Defendants' motions to dismiss. Defendants' Motion to Strike will be denied. The Court can, if necessary, provide a limiting instruction to the Jury to prevent any undue prejudice to Defendants.

### III. CONCLUSION

For the reasons discussed herein:

(1) Weidenbenner's Motion to Dismiss (Doc. No. 24) will be granted insofar as Weidenbenner seeks dismissal, with prejudice, of the official-capacity and individual-capacity claims asserted against her in Count IV under Title II of the ADA and § 504 of the Rehabilitation Act. Insofar as Weidenbenner's motion otherwise incorporates or mirrors the motion filed by the School Board, it will be granted in part and denied in part on the same grounds as those set forth with reference specifically to the School Board's motion.

(2) Defendant Sumner County Board of Education's Motion to Dismiss (Doc. No. 22) will be granted in part and denied in part. The motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction will be denied; the motion to dismiss under Rule 12(b)(6) will be granted in part as follows:

- Count III of the Complaint, seeking damages based on Defendants' alleged violation of Plaintiffs' rights to familial association, and that portion of Count I alleging a violation of Jane Doe's right to

familial association, will be dismissed for failure to state a claim;

- The claims in Count IV of the Complaint against the Board will be dismissed without prejudice based on failure to exhaust administrative remedies under the IDEA;

- Plaintiffs have failed to state a claim for a constitutional violation based upon alleged repeated verbal abuse by Weidenbenner or based upon her allegedly forcing Jane Doe to smell her own feces;

- Plaintiffs have failed to state a claim against the School Board based directly upon Weidenbenner's behavior under a theory that she was an official policy maker for the Board.

- Plaintiffs have failed to state a claim under § 1983 based upon the School Board's purported "special relationship" with Jane Doe.

In all other respects, the Board's Rule 12(b)(6) motion to dismiss will be denied.

(3)  Defendants' Motion to Strike paragraph 7 of the Complaint (Doc. No. 20) will be denied.

An appropriate Order will enter.

_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge