IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ALLEN and JENNIFER SAGAN Individually and o/b/o JANE DOE, a minor, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 3:09-cv-1003 |
| SUMNER COUNTY BOARD OF EDUCATION and DONNA WEIDENBENNER Individually and in her official capacity as Special Needs Teacher of Station Camp Elementary School, | ) ) ) ) ) | Judge Thomas A. Wiseman, Jr. Magistrate Judge Juliet E. Griffin |
| Defendants. | ) | |

## MEMORANDUM OPINION

Before the Court is Defendant Sumner County Board of Education's Motion for Summary Judgment (Doc. No. 74). Defendant Donna Weidenbenner has filed her own separate motion for summary judgment (Doc. No. 78), incorporating by reference the Board's Memorandum in Support of its motion (Doc. No. 76) as well as the Board's Concise Statement of Material Facts (Doc. No. 77). Plaintiffs have filed their response in opposition to the motions, which have now been fully briefed and are ripe for resolution.

Defendants previously filed motions to dismiss and/or to strike certain portions of the Complaint. On July 6, 2010, the Court denied the motion to strike, denied the Rule 12(b)(1) motions to dismiss for failure to exhaust under the IDEA, and granted in part the 12(b)(6) motions by dismissing without prejudice the Rehabilitation Act and Section 504 claims (Count IV) asserted against the Board and by dismissing with prejudice (1) that portion of Count I alleging deprivation of Jane Doe's right to familial association; (2) Count III, alleging deprivation of Plaintiffs' rights to familial association; (3) the claims against the Board based directly on Weidenbenner's behavior based on a theory that she was an official policymaker for the Board; (4) claims against the Board based on the Board's purported special relationship with Jane Doe; and (5) the claims in Count IV (Rehabilitation Act and Section 504 claims (Count IV) against Weidenbenner in her official and individual capacities. (July 6, 2010 Order, Doc. No. 44.) All other portions of the 12(b)(6) motions were denied.

As a result of the Court's ruling, there remained pending causes of action against both the Board and Weidenbenner under 42 U.S.C. § 1983. The claim against Weidenbenner, Count I, is premised upon allegations that Weidenbenner violated § 1983 by depriving Jane Doe, under color of law, of rights secured by the First and Fourteenth Amendments to the United States Constitution, "includ[ing], but . . . not limited to" freedom from the use of excessive force, the deprivation of liberty and property without due process of law, freedom from summary punishment, and freedom from the use of arbitrary government action which "shocks the conscience of a civilized society." (Compl. ¶¶ 23–24.)

The § 1983 claim asserted against the Board in Count II of the Complaint is based upon an alleged deliberate indifference on the part of the School Board manifested by a failure to train or discipline teachers in the detection and prevention of abuse against students by teachers, or to investigate properly reports of abuse by teachers, all of which resulted in the alleged deprivation of Jane Doe's rights to "be free from unreasonable seizures, use of force and arbitrary governmental activity which shocks the conscience in violation of the rights secured to her by the Fourth and Fourteenth Amendment[s]." (Compl. ¶ 27.) Plaintiffs also seek to hold the Board liable under 42 U.S.C. § 1983 for Weidenbenner's actions "under the doctrines of agency, vicarious liability, employer-employee relations, master-servant, respondeat superior, joint venture, contract and as a result of their [sic] non-delegable duty to provide educational services to disabled persons in compliance with the constitution and laws of the United States and the State of Tennessee." (Compl. ¶ 32.)

In other words, all of Plaintiffs' claims are contingent upon a threshold finding that Weidenbenner actually violated Jane Doe's constitutional rights. As set forth herein, the Court finds based on the undisputed facts that Weidenbenner's actions, some of which may plausibly be characterized as abusive,[1] do not rise to the level of constitutional violations. For that reason alone, Defendants are entitled to summary judgment in their favor and dismissal of all claims asserted against them in this action.

I.      STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is

---

[1] Plaintiffs have not asserted any supplemental state-law causes of action in their Complaint.

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The moving party bears the burden of showing the absence of a genuine issue of material fact as to at least one essential element of each of the plaintiff's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The non-moving party, on the other hand, must present sufficient evidence from which a jury could reasonably find for him. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The Court then must determine "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. In making this determination, the court must draw all reasonable inferences in favor of the non-moving party. *Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir.1997).

## II.    STATEMENT OF FACTS

The Board has 46 schools, approximately 28,000 students, and approximately 4200 employees including 46 principals and about 2200 teachers. Defendant Weidenbenner was employed by the Board as a special-education teacher from 1991 until April 2009. During the 2008–2009 academic year, Weidenbenner was assigned to teach at Station Camp Elementary School, a Sumner County public school. Weidenbenner was licensed to teach by the State of Tennessee, and held the appropriate endorsements for the special-education preschool classroom in which she taught. She had been evaluated over the years with satisfactory results.

The Board has introduced abundant evidence regarding Weidenbenner's history, the supervision and oversight of her activities, and the fact that no one formally reported her for abusing any of the special-needs children in her care until the spring of 2009. Sometime in the early spring of 2009, special education teachers Daphne Fritz and Teresa Schweinsberg had a discussion in which Fritz expressed that she was upset about certain things she had observed in Weidenbenner's classroom and did not know what to do about it. Schweinsberg, in her deposition, did not recall that Fritz specified any particular behavior she was concerned about but Fritz recalls they discussed whether use of a weighted blanket and redirecting a head were appropriate. Schweinsberg told Fritz to talk to the principal or the special-education coordinator about her concerns.

On or about March 30, 2009, Schweinsberg gave Dr. Linda Cash, Principal of Station Camp Elementary School, a letter detailing her own concerns about Weidenbenner, including that she was

improperly restraining children and force-feeding them. Schweinsberg did not submit a report to the Department of Children's Services ("DCS") about Weidenbenner because she did not consider the conduct she had observed to rise to the level of child abuse. Dr. Cash, however, perceived the incidents related by Schweinsberg to be potentially abusive, so she made a report to DCS and to the school system's Human Resources Department. Authorities began an investigation into the complaint. After Schweinsberg submitted her letter, Daphne Fritz also submitted a letter about Weidenbenner.

Weidenbenner was removed from the classroom on April 1, 2009. She later resigned. She was indicted in August 2009 on three counts of child abuse.

Jane Doe attended Station Camp Elementary School during the 2008–2009 academic year. Her teacher was defendant Weidenbenner. Jane Doe has Down syndrome; she can speak but is difficult to understand, and uses sign language. Plaintiffs allege that Jane Doe suffered severe abuse amounting to a deprivation of her constitutional rights at the hands of Weidenbenner. The allegations substantiating that claim are as follows. Jane Doe's mother, Jennifer Sagan, alleges that she had a conversation with Weidenbenner in which Weidenbenner told her Jane Doe had done something wrong and Weidenbenner put either her nail or something sharp under Jane Doe's nail and pushed really hard "to try to teach [Jane Doe] a lesson" (J. Sagan Dep. 49:24–50:1); Jennifer Sagan explained to Weidenbenner that this would not "really help" because Jane Doe has a sensory deficit, and Weidenbenner indicated "that she didn't really think [Jane Doe] would care what she did to her." (J. Sagan Dep. 50:22–51:2.) Weidenbenner denies both that the conversation occurred and that she ever pushed anything sharp under Jane Doe's nails. Even assuming the incident to have occurred, Jane Doe appeared fine; her finger appeared fine, and no medical treatment was required in the wake of the alleged fingernail incident. Jennifer Sagan never made a complaint regarding the fingernail incident.

Sagan also testified that Jane Doe had a habit of taking off her shoes and socks in the car on the way to school. On one particular day when she had done this, Weidenbenner had met her at the car and opened the door for her. Jennifer Sagan had started putting Jane Doe's shoes and socks back on while they were in the driving line but had not been able to finish. Weidenbenner said if it were up to her, she would take the shoes and socks back off and make Jane Doe walk into school barefoot. Sagan, believing that Weidenbenner was the professional, agreed, and Jane Doe walked into the school barefoot. After

the second time Jane Doe took her shoes off on the way to school and Weidenbenner made her walk in barefoot, Jennifer Sagan had shared with Weidenbenner that Jane Doe had a sensory deficit and she did not believe making her walk barefoot would help prevent her from removing her shoes. Weidenbenner assured her it would. On the third occasion Weidenbenner met Jane Doe at her car when her shoes were off, Sagan witnessed that Jane Doe stood outside barefoot in a cold November drizzle for at least five minutes, while the teacher and her assistant where getting other children out of cars, before being taken inside. (J. Sagan Dep. 61:16–68:19.) After that incident, Jennifer Sagan was so upset that she kept Jane Doe out of school for a while, but told Weidenbenner that the child was absent due to an illness in the family. Jennifer Sagan mentioned the incident to deaf-education teacher Teresa Schweinsberg and was told to discuss it with the principal. Sagan never did. Jane Doe's feet were fine after walking barefoot.

Jennifer Sagan also recalled witnessing an incident when Jane Doe would not sit down when directed to do so by Weidenbenner, and Weidenbenner "took her by the arm and shoved her down." (J. Sagan Dep. 184:6–8; 195–96.) Sagan never made a complaint about this incident.

Jennifer Sagan saw unexplained marks on Jane Doe during the school year, including bruises on her spine, a possible bruise on her knee, a scratch on her cheek, and bruising around and under the armpits. Jane Doe never complained or showed signs of pain or discomfort, and no medical treatment was ever required.

Teresa Schweinsberg testified that she had seen Weidenbenner throw a weighted blanket onto Jane Doe when she was trying to sit up on her mat when she was supposed to be taking a nap. She also witnessed Weidenbenner shove Jane Doe into Schweinsberg's room with an open palm on the child's back, on more than one occasion. Schweinsberg also testified that on several occasions she found Jane Doe alone in Schweinsberg's room before lunch had ended. She did not know how long the child had been there by herself.

Teaching Assistant Cheryl Valenti testified that she saw Weidenbenner "jerking" children, including Jane Doe, off the step-stool in front of the water fountain when they were not supposed to be up there. (Valenti Dep. Vol. I 96:4–97:16.) Valenti also stated that she had seen Weidenbenner "slam" children, including Jane Doe, down onto their sleeping mats when they tried to get up during naps.

(Valenti Dep. 101:6–16.)

## III.    ANALYSIS AND DISCUSSION

Defendants have now filed their motions for summary judgment, asserting, among other arguments, that Weidenbenner's treatment of Jane Doe did not amount to a violation of her constitutional rights.

Clearly, not every tort rises to the level of a constitutional violation, *Paul v. Davis*, 424 U.S. 693, 699–701 (1976), and not every deprivation of a liberty or property right requires a pre-deprivation hearing or federal remedy. *Ramsey v. Bd. of Educ.*, 844 F.2d 1268, 1273 (6th Cir. 1988). The Supreme Court has recognized that "corporal punishment in public schools implicates a constitutionally protected liberty interest," specifically, an interest in procedural due process, but the Court also held "that the traditional common-law remedies are fully adequate to afford due process." *Ingraham v. Wright*, 430 U.S. 651, 672 (1977). The Supreme Court has not reached the question of whether punishment inflicted in the educational context may implicate *substantive* due process rights, but the Sixth Circuit, along with most of the other Circuit Courts of Appeals, has found that it can. *Webb v. McCullough*, 828 F.2d 1151, 1159 (6th Cir.1987).

The seminal case addressing excessive force in public schools is *Hall v. Tawney*, 621 F.2d 607 (4th Cir. 1980). *See Saylor v. Bd. of Educ. of Harlan County*, 118 F.3d 507, 514 (6th Cir. 1997); *Webb*, 828 F.2d at 1158; *see also Gottlieb v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 173 (3d Cir. 2001) ("*Hall* now provides the most commonly cited test for claims of excessive force in public schools."). In *Hall*, the minor plaintiff was repeatedly paddled and was subsequently taken to the emergency room where she was admitted and kept for ten days for treatment for traumatic injury to her left hip, thigh and buttock. She received treatment from specialists for possible permanent injuries to her lower back and spine. *Hall*, 621 F.2d at 614. In finding that a substantive due process claim existed, the United States Court of Appeals for the Fourth Circuit stated:

> In the context of disciplinary corporal punishment in the public schools, we emphasize once more that the substantive due process claim is quite different than a claim of assault and battery under state tort law. In resolving a state tort claim, decision may well turn on whether "ten licks rather than five" were excessive . . . so that line-drawing this refined may be required. But substantive due process is concerned with violations of personal rights of privacy and bodily security of so different an order of magnitude that inquiry in a particular case simply need not start at the level of concern these distinctions imply. As in the cognate police brutality cases, the substantive due

> process inquiry in school corporal punishment cases must be *whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.* Not every violation of state tort and criminal assault laws will be a violation of this constitutional right, but some of course may.

*Hall*, 621 F.2d at 613 (emphasis added; citations omitted).

The Sixth Circuit expressly adopted this rationale in *Webb*, 828 F.2d at 1158, in which a high school girl on a school trip locked herself in the bathroom after the principal informed her that he was going to send her home upon his discovery of a boy and alcohol in her room. *Id.* at 1153–54. The principal became angry when he realized the girl had locked herself in the bathroom. He attempted to "jimmy" the lock, but when that failed he slammed into the door repeatedly with his shoulder. The door gave way knocking the girl against the wall and then onto the floor. The principal grabbed her from the floor, threw her against the wall and slapped her. *Id.* at 1154.

The Sixth Circuit, quoting from *Hall*, determined that a substantive due process claim existed. It reversed and vacated the district court's order granting the defendant's motion for summary judgment, stating:

> Because the alleged blows were not struck in the school context, where the need for immediate disciplinary control . . . is at its greatest, because [the principal] was *in loco parentis* to [the plaintiff], and because it is possible that the blows were not disciplinary in nature, a trier of fact could find that under the circumstances, [the principal's] need to strike [the plaintiff] was so minimal or non-existent that the alleged blows were a brutal and inhumane abuse of [the principal's] official power, literally shocking to the conscience.

828 F.2d at 1159. The Court also noted that the record did not reveal any reason for the blows or that "the blows arose other than in anger or from malice." *Id.* at 1158.

In the present record, while there is indeed some evidence that Weidenbenner engaged in behavior that may properly be characterized as inappropriate and abusive, there is no indication that Weidenbenner caused Jane Doe severe, conscience-shocking injury, either physical or psychological, or that she engaged in a "brutal and inhumane abuse of official power" in her dealings with Jane Doe. In sum total, the evidence in this record indicates that Weidenbenner "shoved" and "jerked" Jane Doe on occasion, may have "slammed" her into a sitting position on the floor or in a chair, made her walk barefoot in the rain, and may have once pressed something sharp under her fingernail, all purportedly to teach her a lesson of some sort. These incidents, while potentially excessive or even abusive, did not cause severe

physical harm and do not shock the conscience. Plaintiffs assert that Weidenbenner engaged in verbal abuse, and that she was unnecessarily abrasive and harsh with her students, but, as this Court has already determined, "[v]erbal abuse is not normally a constitutional violation." *Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000); *see also Johnson v. Dallatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding verbal abuse does not give rise to Eighth Amendment claim).

The cases upon which Plaintiffs rely in their effort to avoid summary judgment are distinguishable. Plaintiffs lean particularly hard on *Webb v McCullough*, 828 F.2d 1151 (6th Cir. 1987), largely because the injury inflicted in that case was not severe but the court nonetheless denied summary judgment for the defendant. In contrast to the facts in that case, however, there is no evidence in this record from which an inference could be drawn that the injuries allegedly inflicted on Jane Doe were *not* disciplinary in nature, and all of the incidents took place on school grounds and within the pedagogical context. While Weidenbenner is alleged to have behaved in a harsh manner, there is no evidence that she ever struck Jane Doe purely out of anger or malice. In sum, Plaintiffs cannot show that Weidenbenner engaged in behavior that violated Jane Doe's constitutional rights. Because a violation of those rights is a required element of the claims asserted against both the School Board and Weidenbenner individually under § 1983, those claims must fail and Defendants are entitled to summary judgment in their favor.

IV. **CONCLUSION**

Defendants' motions for summary judgment will be granted and this matter dismissed on the grounds that Plaintiffs have not demonstrated that Jane Doe suffered injury that rises to the level of a constitutional violation. An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge