| | | |
|---|---|---|
| ALLEN SAGAN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:09-cv-1003 |
| | ) | |
| SUMNER COUNTY BOARD OF EDUCATION, | ) | Judge Thomas A. Wiseman, Jr. |
| DONNA WEIDENBENNER, | ) | |
| | ) | |
| Defendants. | ) | |
| | | |
| CHARLIE JACKSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:09-cv-1004 |
| | ) | |
| SUMNER COUNTY BOARD OF EDUCATION, | ) | Judge Thomas A. Wiseman, Jr. |
| DONNA WEIDENBENNER, | ) | |
| | ) | |
| Defendants. | ) | |
| | | |
| JERRY JACKSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:09-cv-1005 |
| | ) | |
| SUMNER COUNTY BOARD OF EDUCATION, | ) | Judge Thomas A. Wiseman, Jr. |
| DONNA WEIDENBENNER, | ) | |
| | ) | |
| Defendants. | ) | |
| | | |
| JEFF LONG, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:09-cv-1013 |
| | ) | |
| SUMNER COUNTY BOARD OF EDUCATION, | ) | Judge Thomas A. Wiseman, Jr. |
| DONNA WEIDENBENNER, | ) | |
| | ) | |
| Defendants. | ) | |

TERRY MINNIS, et al.,                          )
                                               )
      Plaintiffs,             )
                                               )
v.                                             )          3:10-cv-0075
                                               )
SUMNER COUNTY BOARD OF EDUCATION,              )          Judge Thomas A. Wiseman, Jr.
DONNA WEIDENBENNER,                            )
                                               )
      Defendants.             )

## MEMORANDUM

In these related cases, the Sixth Circuit Court of Appeals vacated the decisions of this Court denying the prevailing defendants' motions for attorney fees, and remanded for further consideration and review consistent with the Circuit Court's opinion.  More specifically, the appellate court held that this Court abused its discretion in denying the motions for attorney fees insofar as the Court failed to consider the plaintiffs' respective claims and circumstances individually, for instance, by failing to address the fact that in at least one of the cases, the plaintiffs presented "absolutely no evidence of abuse by Weidenbenner," and in failing to address the "admittedly groundless claims dismissed earl[y] in the litigation, including the loss-of-familial-association claim."  *Sagan v. Sumner Cnty. Bd. of Educ.*, No. 11-5168, 2012 WL 4773565, at *4. (6th Cir. Oct. 5, 2012).  To be clear, the Sixth Circuit did not mandate an award of attorney fees in any of the related cases.  Instead, it stated:  "We leave for the district court to determine which plaintiffs pursued frivolous claims and the appropriate sanctions, to be determined by the information known to the plaintiffs at the time they took actions advancing or defending those claims."  *Id.*

Having now conducted the more particularized review as instructed, as set forth herein, the Court finds that the defendants are not entitled to recover attorney fees in the Sagan plaintiffs' case (Case No. 3:09-cv-1003); the motion to recover fees in that case will be denied.  The Court further finds that the defendants are entitled to recover a portion of their attorney fees in the other four cases that are the subject of the Sixth Circuit's remand (Case Nos. 3:09-cv-1004, 3:09-cv-1005, 3:09-cv-1013, and 3:10-cv-75), and their motions in those cases will be granted in part and denied in part, for the reasons discussed herein.

## I.      STANDARD OF REVIEW

The defendants move for attorney fees under 42 U.S.C. § 1988(b).  That provision permits the

Court, in its discretion, to award a "reasonable attorney's fee" to the prevailing party in "any action . . . to enforce a provision of" § 1983. 42 U.S.C. § 1988(b). While the provision itself does not distinguish between a prevailing plaintiff and a prevailing defendant, the Sixth Circuit has repeatedly held that "[a]n award of attorney fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct." *See, e.g.*, *Riddle v. Egensperger*, 266 F.3d 542, 547 (6th Cir. 2001) (internal quotation marks and citation omitted). The standard established by the Supreme Court for an award of attorney fees to a prevailing defendant in a civil rights action is that "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978).

Further, the Supreme Court has cautioned that district courts should "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg Garment Co.*, 434 U.S. at 421–22. Thus, without allowing the intrusion of hindsight, the Court must consider, among other things, the plaintiffs' factual basis for bringing suit, and should consider awarding attorney fees to the prevailing defendants where "no evidence supports the plaintiff[s'] position or [where] the defects in the suit are of such magnitude that the plaintiff[s'] ultimate failure is clearly apparent from the beginning or at some significant point in the proceedings after which the plaintiff[s] continue[] to litigate." *Smith v. Smythe–Cramer Co.*, 754 F.2d 180, 183 (6th Cir. 1985).

In addition, the Supreme Court has recently clarified that prevailing defendants may recover attorney fees under 42 U.S.C. § 1988 where only some of the plaintiffs' claims are frivolous. *Fox v. Vice*, 131 S. Ct. 2205, 2214 (2011). However, in a case involving "both frivolous and non-frivolous claims, a defendant may recover the reasonable attorney's fees he expended *solely* because of the frivolous allegations. And that is all. Consistent with the policy underlying § 1988, the defendant may not receive compensation for any fees that he would have paid in the absence of the frivolous claims." *Id.* at 2218 (emphasis added). The Supreme Court also articulated this standard as a "but-for" test, that is: "Section 1988 permits the defendant to receive only the portion of his fees that he would not have paid *but for* the frivolous claim." *Id.* at 2215 (emphasis added).

With these principles in mind, the Court reconsiders the defendants' motions for attorney fees in each of the related cases individually.

## II.     ANALYSIS AND DISCUSSION

### A.     *Sagan v. Sumner County Board of Education*, Case No. 3:09-cv-1003

Jennifer and Allen Sagan (the "Sagan plaintiffs") brought suit on behalf of their minor child, Jane Doe Sagan, a disabled child who was in defendant Donna Weidenbenner's special-needs classroom at Station Camp Elementary School during the 2008–09 school year.  The vast majority of the plaintiffs' claims were dismissed on the defendants' motions to dismiss.  The two remaining claims were later dismissed on the defendants' motions for summary judgment.

The claims dismissed on the defendants' motions to dismiss included claims against Weidenbenner under the ADA and the Rehabilitation Act, claims against defendant Sumner County Board of Education ("School Board") under the IDEA, and several claims against one or both defendants under 42 U.S.C. § 1983, including a claim the parents asserted on their own behalf for loss of familial association.  The only claims remaining after the ruling on the motions to dismiss were (1) a claim under 42 U.S.C. § 1983, asserted by the parents on behalf of their child against plaintiff Weidenbenner in her individual capacity, based on allegations that Weidenbenner had abused the minor child while she was a preschool pupil in Weidenbenner's classroom and that the abuse was severe enough that it rose to the level of a constitutional violation, and (2) a claim against the School Board under 42 U.S.C. § 1983 based on an alleged failure to train or to supervise, which amounted to deliberate indifference to the constitutional rights of the children in Weidenbenner's care.  The claim against Weidenbenner was based on allegations that Weidenbenner had jabbed a sharp object under one of Jane Doe's fingernails to discipline her.[1]  As the Court stated in denying the defendants' motion to dismiss that claim, it was difficult to imagine a legitimate reason for a teacher ever to jab "something sharp" under a child's fingernail in

---

[1] In ruling on the defendants' motions to dismiss, the Court found that the plaintiffs' other allegations of abuse were not sufficiently serious to rise to the level of a constitutional violation.  These included allegations that Jane Doe Sagan was left alone and unattended in an empty classroom for at least twenty minutes, while crying uncontrollably; that the child was subjected to "constant abusive comments" by Weidenbenner; and that the child was required to smell her own feces after a toileting accident.  (Case No. 3:09-cv-1003, Complaint, ECF No. 1, at ¶¶ 8–12.)

order to discipline her, and it was unclear at that stage in the proceedings whether the action was taken within a pedagogical context.  (Case No. 3:09-cv-1003, ECF No. 43, at 19.)

A very small amount of additional evidence surfaced during the course of discovery regarding Weidenbenner's treatment of Jane Doe Sagan, most of which was in the plaintiffs' possession from the outset.  This included evidence that Weidenbenner made Jane Doe Sagan walk barefooted from her car into the school on at least three occasions (once on a day when it was cold and rainy), to try to teach her not to take off her shoes and socks in the car on the way to school; that Weidenbenner took Jane Doe Sagan by the arm and shoved her down after the child would not sit down after having been directed to do so; and that the child was occasionally left alone in another teacher's empty classroom for a part of lunch period, among several more minor allegations.  Jennifer Sagan also testified that, on one occasion, Weidenbenner told her that once when the child had misbehaved in some way, Weidenbenner had put her fingernail or something sharp under Jane Doe's nail and pushed really hard "to try to teach her a lesson."  (Case No. 3:09-cv-1003, J. Sagan Dep. 49:24–50:1, ECF No. 74-22.)

In opposing the defendants' motions for summary judgment, the plaintiffs relied heavily upon the case of *Webb v. McCullough*, 828 F.2d 1151 (6th Cir. 1987).  In that case, a high school girl on a school trip locked herself in a hotel bathroom after the principal informed her that he was going to send her home upon his discovery of a boy and alcohol in her room.  *Id.* at 1153–54.  The principal became angry when he realized the girl had locked herself in the bathroom.  He attempted to "jimmy" the lock, but when that failed he slammed into the door repeatedly with his shoulder.  The door gave way, knocking the girl against the wall and then onto the floor.  The principal grabbed her from the floor, threw her against the wall and slapped her.  *Id.* at 1154.  The district court had granted summary judgment for the defendants on the plaintiff's substantive due-process claim relating to the alleged blows by the principal.  On appeal, the Sixth Circuit reconfirmed that "the substantive due process inquiry in school corporal punishment cases must be whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience."  *Id.* at 1158 (quoting *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980)).  However, the court also found that the circumstances at issue in *Webb* were distinguishable from those in other school

corporal-punishment cases holding that to establish a constitutional violation in this context, the plaintiff must present proof of severe injuries, stating:

> Because the alleged blows were not struck in the school context, where the need for immediate disciplinary control . . . is at its greatest, because [the principal] was *in loco parentis* to [the student], and because it is possible that the blows were not disciplinary in nature, a trier of fact could find that under the circumstances, [the principal's] need to strike [the student] was so minimal or non-existent that the alleged blows were a brutal and inhumane abuse of [the principal's] official power, literally shocking to the conscience.

*Id.* at 1159. The court therefore reversed summary judgment for the principal.

In the case at bar, the plaintiffs argued that because the plaintiffs' child was disabled, the teacher effectively stood *in loco parentis*, even while in the classroom, and that there was never a legitimate pedagogical reason for any use of force against a disabled child, and therefore that the facts of the case were analogous to those in *Webb*. The Court rejected that argument and instead concluded that undisputed facts showed that the alleged acts by Weidenbenner were taken in a pedagogical and disciplinary context and that, while the alleged acts might properly be characterized as inappropriate and abusive, they did not amount to a constitutional violation that would give rise to a claim under 42 U.S.C. § 1983.

Nonetheless, while the plaintiffs did not prevail on their § 1983 claim brought on behalf of their child, the Court cannot find that the claim was factually or legally frivolous or unreasonable from the outset of the litigation. Although the Court rejected the plaintiffs' assertion that *Webb* was controlling, the argument was not unreasonable. As the Court previously recognized, the plaintiffs confronted a challenging factual situation in light of their child's youth, developmental disabilities, and limited ability to communicate, and they reasonably argued for extending the frontier of what constitutes abuse arising to a constitutional violation in the pedagogical context when the victim of the alleged abuse is a very young, non-verbal, special-needs child.

Moreover, the Sixth Circuit has recognized that "[t]he primary purpose of the attorney fee statute was to encourage plaintiffs to bring suit in new and undeveloped areas of civil rights laws." *Northcross v. Bd. of Educ. of Memphis City Schs.*, 611 F.2d 624, 635 (6th Cir. 1979), *cert. denied*, 447 U.S. 911 (1980). The Sixth Circuit has also repeatedly reconfirmed that an award of attorney fees against losing plaintiffs in a civil rights action "is an *extreme sanction*, and must be limited to *truly egregious* cases of misconduct."

*Garner v. Cuyahoga Cnty. Juvenile Ct.*, 554 F.3d 624, 642 (6th Cir. 2009) (quoting *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986) (emphasis added by Sixth Circuit). This is not a case of truly egregious misconduct.

As for those claims dismissed when the Court granted in part the defendants' motions to dismiss, which were largely premised upon the same factual allegations that supported the plaintiffs' § 1983 claim, the Court finds that only the claim based on violation of the plaintiffs' or their child's "constitutional right of familial association" were arguably frivolous or unreasonable. The other claims, though ultimately deemed to be without merit, presented complex factual and legal questions the resolution of which was not obvious or easy. Regardless, even if the Court were to presume that all the claims dismissed on the defendants' motions to dismiss were frivolous or unreasonable from the outset, the defendants have offered no basis from which this Court could reasonably conclude that some portion of the fee amount the defendants apportion to this case would not have been incurred "but for" the need to defend against the frivolous or unreasonable claims. *Fox v. Vice*, 131 S. Ct. 2205, 2215 (2011). The defendants have certainly not shown what portion of fees, if any, would not have been incurred but for the arguably frivolous familial-association claim. That is, the defendants have not made any effort to show what "portion of [their] fees [they] would not have paid but for the frivolous claim[s]." *Id.* Instead, they claim the entire litigation was frivolous or unreasonable, and that they are entitled to recover the fee apportioned for the entire case. Even if the Court were to find that a substantial portion of this case were frivolous or unreasonable, because the defendants have made no attempt to show what portion of their fee would *not* have been incurred but for the frivolous or unreasonable claims, the defendants would not be entitled to recover any fees.

Accordingly, the defendants' motion for attorney fees in the Sagan case (Case No. 3:09-cv-1003, ECF No. 114) will be denied.

**B.    Charlie Jackson v. Sumner County Board of Education, Case No. 3:09-cv-1004**

Charlie and Mary Jackson brought suit on their own behalf and on behalf of their minor child, Jane Doe Jackson, who, like Jane Doe Sagan, was a special-needs pupil in Weidenbenner's classroom at Station Camp Elementary School during the 2008–09 school year. In this case as in the Sagan case, nearly all the plaintiffs' claims were dismissed in the Court's ruling on the defendants' motions to dismiss.

In the order granting in part the motions to dismiss, the Court noted that the allegations in the complaint brought by Charlie Jackson and his wife were "basically identical to those set forth in a related case, *Sagan v. Sumner County Board of Education et al.*, Case No. 3:09-cv-1003, except that the Amended Complaint contains even fewer allegations pertaining specifically to the minor child on whose behalf suit is brought." (Case No. 3:09-cv-1004, ECF No. 51, at 1.) In fact, in total, the complaint alleged that Jane Doe Jackson was "repeatedly subjected to being grabbed by her jaws and having her face squeezed, causing her severe pain." (Case No. 3:09-cv-1004, ECF No. 3, at ¶ 8.) The Court noted: "To be sure, it appears unlikely that the plaintiffs will be able to prove an injury of constitutional magnitude based upon defendant Weidenbenner's having allegedly grabbed Jane Doe repeatedly by her jaws and squeezed her face," but that, "because th[e] case [was] still in the discovery phase, and in light of the difficulties inherent in communicating with an autistic child" (Case No. 3:09-cv-1004, ECF No. 51, at 2), the Court denied the motion to dismiss the claim and allowed discovery to proceed, largely on the basis of the Sixth Circuit's holding in *Webb v. McCullough*, 828 F.2d 1151 (6th Cir. 1987), even though that case was not cited in the order. Moreover, with the exception of the familial-association claims, the plaintiffs' other claims were not patently frivolous or unreasonable. As stated in connection with the Sagan plaintiffs' case, the claims, though ultimately deemed to be without merit, presented complex factual and legal questions the resolution of which was not obvious or easy.

By the time discovery was completed, however, it should have become apparent to the plaintiffs and their counsel that they were not in possession of any *admissible* evidence that Weidenbenner had ever inflicted pain or otherwise acted toward Jane Doe Jackson with anger or malice, and certainly no evidence of behavior that could reasonably be characterized as conscience-shocking. Rather, the only evidence in the record that Weidenbenner had inflicted pain by squeezing the child's face was in the form of hearsay from the parents and not from the child herself. Moreover, the parents' depositions revealed nothing else of a serious nature. Besides testifying that her child had complained that Weidenbenner had hurt her by squeezing her face, Mary Jackson relayed that her child had complained on one occasion that Weidenbenner had picked her up "hard" and put her back down on her mat, making her cry, and on another occasion that Weidenbenner had pulled the child's blanket over her head at naptime, and that the child made a "little hole" so she could see. (Case No. 3:09-cv-1004, M. Jackson Dep., Vol. I, at 64:22–24,

67:19–68:3, ECF No. 87-22.)  That claim was substantiated by Weidenbenner's assistant, who testified that she saw Weidenbenner use a weighted blanket on Jane Doe Jackson during naptime, and that, on one occasion at least, the blanket covered her face.  However, the child's face was not covered again after Mary Jackson complained about that practice, and the practice of pulling a blanket over the child's face was not alleged to hurt her or make her have difficulty breathing.

In other words, by the time discovery was completed, it should have been apparent to the plaintiffs that the continuation of their lawsuit based on these flimsy allegations had become unreasonable and their claims had tipped into the territory of frivolity.  As set forth above, "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so."  *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978).  Although the Supreme Court and the Sixth Circuit have "stress[ed] that the underlying purposes of § 1983 and § 1988 [should] not be undermined in awarding fees to prevailing defendants too freely," *Tarter v. Raybuck*, 742 F.2d 977, 986 (6th Cir. 1984) (citing *Christiansburg Garment*, 434 U.S. at 412–22), one important factor to consider in determining whether to award attorney fees to prevailing defendants is whether "no evidence supports the plaintiff[s'] position or [where] the defects in the suit are of such magnitude that the plaintiff[s'] ultimate failure is clearly apparent from the beginning or at some significant point in the proceedings after which the plaintiff[s] continue[] to litigate."  *Smith v. Smythe–Cramer Co.*, 754 F.2d 180, 183 (6th Cir. 1985).  Here, the plaintiffs should have realized after discovery and in particular after the parties' depositions that they were not in possession of admissible evidence suggesting that Weidenbenner took any action that resulted in the infliction of even a *de minimis* level of pain on the plaintiffs' minor child.  Without some evidence that Weidenbenner sadistically or maliciously inflicted pain on their child, the plaintiffs' § 1983 claims against Weidenbenner and the School Board were patently unsustainable.  *See Webb*, 828 F.2d at 1159 (confirming that the standard for establishing a § 1983 claim in this context required a showing of a "brutal and inhumane abuse of . . . official power, literally shocking to the conscience").

In light of the complete absence of admissible evidence of physical abuse that might give rise to a cause of action under § 1983 for violation of the minor child's constitutional rights, the Court finds that this case represents the "truly egregious case[] of misconduct," *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232

(6th Cir. 1986), in which fees should be awarded to a prevailing defendant under 42 U.S.C. § 1988.  The defendants' motion for attorney fees related to their defense of this suit will therefore be granted in part, in an amount to be apportioned as set forth in section III of this Memorandum, below.

      **C.      Jerry Jackson v. Sumner County Board of Education, No. 3:09-cv-1005**

      Jerry and Ashley Jackson brought suit on behalf of their minor child, John Doe Jackson, who was a four-year-old preschool pupil at Station Camp Elementary School during the 2008–09 school year. Although John Doe Jackson is not disabled, he was placed in Weidenbenner's special-needs classroom as a "peer student." (Case No. 3:09-cv-1005, A. Jackson Dep. 19:4–13, ECF No. 62-22.) The defendants' motions to dismiss Jerry and Ashley Jackson's complaint was denied in part and granted in part on September 20, 2010 (Case No. 3:09-cv-1005, ECF No. 50) on basically the same grounds as in the companion cases. The Court, again, permitted the plaintiff's § 1983 claims to proceed based on very thin allegations that Weidenbenner had physically assaulted John Doe Jackson, shoving him into a bookshelf. The Court determined, again based in large part upon the Sixth Circuit's holding in *Webb v. McCullough*, that the plaintiffs' § 1983 claim should proceed beyond the summary judgment stage.

      The evidence supporting the allegations that Weidenbenner had  shoved John Doe Jackson into a bookshelf came into the record through the deposition of Weidenbenner's classroom teaching assistant, Cheryl Valenti, who testified that she witnessed Weidenbenner shove John Doe Jackson after he cut into line, knocking him into a bookcase. (Case No. 3:09-cv-1005, Valenti Dep., Vol. I, at 67:13–68:20, 100:25–101:5, ECF No 62-19.) Although this action apparently startled the child, there is no evidence that it caused him pain or even caused him to cry. (*Id.* 69:8–18.) Valenti also testified that she witnessed Weidenbenner "slam" John Doe Jackson into a chair, and once saw her "jerk" John Doe Jackson off the drinking platform when he was not supposed to be there. (*Id.* at 96:4–97:14.) Discovery revealed other anecdotal evidence that the parents had seen minor bruises on their child, though there was no evidence as to their cause, and that the child began having behavioral problems the year he was in Weidenbenner's class, but again there was no evidence regarding cause, and no evidence that Weidenbenner ever struck John Doe or caused him pain. The plaintiffs, in fact, had no concerns about their child's being in Weidenbenner's classroom until after they were notified that Weidenbenner had been removed from the class under suspicion of mistreating certain children.

In other words, by the time discovery was completed, the evidence in the record suggested a possible pinch, shove, and a jerk, but no evidence that Weidenbenner had actually inflicted pain on the plaintiffs' son or had acted with the degree of malice or anger that could shock the conscience. As in the other Jackson plaintiffs' case , because it was or should have been obvious to the plaintiffs by that time that the evidence of record was insufficient to establish that Weidenbenner had acted with the requisite conscience-shocking "brutal and inhumane abuse of . . . official power," Webb, 828 F.2d at 1159, maintenance of the plaintiffs' claims after that time became unreasonable. In light of the complete absence of admissible evidence of physical abuse that might give rise to a cause of action under § 1983 for violation of the minor child's constitutional rights, the Court finds that this case represents the "truly egregious case[] of misconduct," *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986), in which fees should be awarded to a prevailing defendant under 42 U.S.C. § 1988.

The defendants' motion for attorney fees incurred in connection with the plaintiffs' pursuit of this case past discovery will therefore be granted in part, apportioned as discussed in Part III, below.

### D. Long v. Sumner County Board of Education, No. 3:09-cv-1013

Plaintiffs Jeff and Jenny Long filed suit in October 2009 on their own behalf and on behalf of their minor child, John Doe Long. The Long plaintiffs alleged that their son is a special-needs child with spastic cerebral palsy and microcephaly, which, among other things, significantly impair his ability to communicate verbally. He was in a class taught by Weidenbenner at Station Camp Elementary School during the 2008–09 school year, when he was three years old.

In their complaint, the Long plaintiffs alleged that Weidenbenner was overheard yelling at John Doe Long on one occasion, telling him to "Shut up! Stop crying!" (Case No. 3:09-cv-1013, ECF No. 1, at ¶ 8); that Weidenbenner "repeatedly" subjected John Doe Long to force feedings (*id.* ¶ 9); that on one occasion the child was "found napping in a small, cramped storage closet with the lights off" (*id.* ¶ 10); and that these were not isolated incidents. The Court held that allegations of verbal abuse did not give rise to a claim of constitutional dimension, but permitted the § 1983 claim to survive the motions to dismiss based on the allegations of force-feeding and isolating the child. Discovery, however, further revealed that the storage closet was actually a doorless storage alcove in the back of Weidenbenner's classroom, where John Doe Long was placed (on his sleeping mat) on one occasion during naptime

because he was making noise and preventing other children in the class from napping. No evidence was introduced into the record to support the allegation that Weidenbenner had "force-fed" the child; rather, the evidence indicated that she had, on at least one occasion, taken food away from him in response to his throwing food. There was no evidence that the child was malnourished or went hungry as a consequence. The record was otherwise devoid of admissible evidence that the child was mistreated by Weidenbenner in any way. The parents testified that they believed their son's behavioral problems were exacerbated during the year he was in Weidenbenner's class, but other evidence showed that they were concerned before the school year started that his behavioral problems were worsening. On school intake forms, which Jenny Long filled out before her son started preschool, Long noted that her son was "excitable, overactive, has many fears, cries easily, has temper tantrums, mood swings often, and wants a lot of attention." (J. Long Dep. 169:11–13.) On the basis of this evidence, the Court noted, in granting summary judgment for the defendants, that there was not "a shred of evidence" in the record "that Weidenbenner abused or injured John Doe [Long], much less caused him severe, conscience-shocking injury, either physical or psychological, or that she engaged in a 'brutal and inhumane abuse of official power' in her dealings with him." (Case No. 3:09-cv-1013, ECF No. 96, at 9 (quoting *Webb*, 828 F.2d at 1159).)

In other words, although the plaintiffs knew or should have known at least by the time they had conducted discovery that the record was devoid of evidence that might arguably support a claim that Weidenbenner's treatment of John Doe Long amounted to a constitutional violation, even under the standard enunciated in *Webb*. Notwithstanding, in their supplemental response in opposition to the defendants' motion for attorney fees, plaintiffs' counsel argues generally that

> Andy Allman and Plaintiffs zealously pursued these claims because the children were vulnerable. They felt a special obligation to protect the constitutional rights of these children. In Mr. Allman's legal judgment, there was a good faith, reasonable argument under prevailing law that the acts of abuse were constitutional violations and not just pedagogical in nature. Neither Mr. Allman nor Plaintiffs ever intended to vex Defendant or pursue a vindictive course of action with this litigation. Mr. Allman's obligation to zealously represent Plaintiffs and their children meant that Plaintiffs could not wait months or years to file the lawsuits because the children are profoundly handicapped. The ability of Plaintiff children to recall events was severely impaired and would get worse as time pressed on. This is why they could not wait to conduct informal discovery or engage in administrative action that would delay the process.
>
> Mr. Allman researched case law related to whether abuse by a teacher is a

constitutional violation. Mr. Allman was satisfied that he could make a good faith argument that Ms. Weidenbenner's abuse of the children was not simply "pedagogical" or disciplinary in nature. *See, e.g., Roe v. Nevada*, 621 F. Supp. 2d 1039, 1053 (D. Nev. 2007); *Webb v. McCullogh*, 828 F.2d 1151 (6th Cir. 1987). While this Court ultimately disagreed with Mr. Allman's legal theory, it does not mean *ipso facto* that the cases were frivolous. *See Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 422 (1978) (the district court should resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation). In fact, this Court found that Plaintiffs "reasonably argued for extending the frontier of what constitutes abuse arising to a constitutional violation in the pedagogical context when the victim of the abuse is a special-needs child."

(Case No. 3:09-cv-1013, ECF No. 124, at 3.)

Specifically with respect to this case, however, the plaintiffs concede that this was "the most difficult case because the case depended heavily on the pattern of abuse meted out against other children" and upon the fact that Weidenbenner pleaded guilty to felony child abuse that specifically related to John Doe Long, a fact that was never brought to light in the proceedings before this Court, and apparently would not have been admissible anyway.[2] In other words, the plaintiffs were admittedly aware, fairly early in the proceedings, there was little or no evidence that Weidenbenner had actually abused their child; instead, there was evidence that she might possibly have abused other children. The plaintiffs nonetheless assert that, at the genesis of the case, they presumed that a guilty plea to felony child abuse would necessarily mean that the conduct at issue could not be deemed to have had a pedagogical objective and therefore would necessarily qualify as unconstitutional conduct.

The Court has no difficulty concluding that the plaintiffs and their parents proceeded in good faith, but good faith is not the standard. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 420 (1978). The Court finds that pursuit of this case, even if not frivolous from the outset, had become unreasonable by the time discovery had concluded and the plaintiffs clearly had reason to know that the minimal evidence of abuse, even if it might have supported a state-law claim, did not reasonably support a constitutional

---

[2] According to the plaintiffs, the plea was submitted under *North Carolina v. Alford*, 400 U.S. 25, 37 (1970), which meant that Weidenbenner pleaded guilty without admitting guilt, on the basis that she intelligently concluded that her best interests were served by a guilty plea. Although the plea was not admissible as direct evidence of guilt at trial, it could have been used against Weidenbenner under Rule 410 of the Federal Rules of Evidence to estop her from denying that the conduct occurred. (Case No. 3:09-cv-1013, ECF No. 124, at 12 (citing *Walker v. Schaeffer*, 854 F.2d 138 (6th Cir. 1988)). This Court has no knowledge of what conduct was alleged in the indictment to which Weidenbenner pleaded guilty.

violation or any other federal cause of action. Further, in light of the complete absence of admissible evidence of physical abuse that might give rise to a cause of action under § 1983 for violation of the minor child's constitutional rights, the Court finds that this case represents the "truly egregious case[] of misconduct," *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986), in which fees should be awarded to a prevailing defendant under 42 U.S.C. § 1988.

The defendants' motion for attorney fees incurred in connection with the plaintiffs' pursuit of this case past discovery will therefore be granted in part, apportioned as discussed in Part III, below.

### E. Minnis v. Sumner County Board of Education, Case No. 3:10-cv-75

Plaintiffs Terry and Jamie Minnis filed suit on January 25, 2010, some months after the other six lawsuits against the same defendants had been filed.. They brought claims on their own behalf and on behalf of their son John Doe Minnis, a special-needs child with Asbergers Syndrome who was in a class taught by Weidenbenner from 2005 through 2007 at Beech Elementary School. Their § 1983 claims, which were premised upon allegations that Weidenbenner had hit and grabbed John Doe Minnis with enough force to cause bruising, and had grabbed his head with both her hands and shaken him violently, survived the defendants' motions to dismiss. The complaint was somewhat vague (even contradictory) regarding when, exactly, the Minnis plaintiffs had become aware of Weidenbenner's alleged mistreatment of John Doe Minnis, but during discovery the defendants learned that the child had complained to his parents in April 2007 that Weidenbenner had hurt him by grabbing his head and shaking it. Jamie Minnis promptly informed the school principal of her child's allegation, and the Minnises then met with Weidenbenner and the principal to discuss the incident. At that same meeting, the Minnises mentioned another incident that had allegedly occurred a year previously, when John Doe Minnis had come home with a bruise on his arm. Jamie Minnis stated she had discussed the incident with Weidenbenner at the time it occurred, and Weidenbenner had explained that she had grabbed the child by the arm to stop him from running wildly. The parties agreed at this meeting in April 2007 that, going forward, Weidenbenner would not touch the child, and the child would receive a behavioral assessment. No other allegations came to light regarding Weidenbenner's treatment of the child during discovery.

The plaintiffs, in their supplemental brief in opposition to the defendants' motion for attorney fees, do not point to any evidence in the record that might have been overlooked by the Court. Instead, they

simply reiterate their argument that the Court found that, in this case as in the others, the plaintiffs "confronted a challenging factual situation in light of [the child's] youth, developmental disabilities, and limited ability to communicate, and reasonably argued for extending the frontier of what constitutes abuse arising to a constitutional violation in the pedagogical context when the victim of the abuse is a special-needs child." (ECF No. 124, at 8–9.) The Court reconsiders that finding now, and concludes that, in light of the dates during which the alleged abuse of the Minnis child occurred and the dates upon which the plaintiff parents became aware of the alleged abuse, the factual situation here clearly did not present an opportunity for a reasonable extension of *Webb*. Rather, the plaintiffs were in possession of all the operative facts well before filing suit in this case, and the plaintiffs and their attorneys knew or should have known that Weidenbenner's actions in this case—grabbing the child by the face on one occasion for the purpose of redirecting his attention, and grabbing his arm to stop him from running wildly—did not amount to "a brutal and inhumane abuse of [Weidenbenner's] power, literally shocking to the conscience." *Webb*, 828 F.2d at 1159. Moreover, because all the other causes of actions asserted by the Minnis plaintiffs were premised upon the same allegations of abuse by Weidenbenner, the Court finds that the case as a whole was patently frivolous from the outset, and that the plaintiffs and their counsel knew or should have known even before they filed suit that their allegations, even if true, were not sufficiently serious to state a federal cause of action.[3]

The Court notes that, if the plaintiffs had truly felt that their son had been injured or that they had a viable federal claim (or even a state-law tort claim) based on Weidenbenner's actions, they likely would have brought suit in 2007, when their child was still in Weidenbenner's classroom. Instead, the plaintiffs and their counsel brought this action in 2010 as a tag-along suit after six other lawsuits had been filed, nearly three years after Weidenbenner ceased being their child's teacher, apparently hoping that the paucity of evidence that Weidenbenner actually abused their child would be overlooked in the context of a complaint detailing numerous instances of abuse allegedly perpetrated on other children. To some

---

[3] In particular, the Minnises' claims brought on their own behalf, as opposed to those brought on behalf of their minor child, were obviously barred by the one-year statute of limitations that governs § 1983 actions in Tennessee. Tenn. Code Ann. § 28-3-104(a)(3); *Berndt v. Tennessee*, 796 F.2d 879, 883 (6th Cir. 1986).

extent, this tactic was successful, as it prevented the Court from dismissing the claim in its entirety when ruling on the defendants' motions to dismiss. Based largely upon the "me-too" element of this case, and the attempt to amalgamate claims to make it appear that the defendants' actions were more serious than they actually were, the Court finds that this case represents the "truly egregious case[] of misconduct," *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986), in which fees should be awarded to a prevailing defendant under 42 U.S.C. § 1988.

Because the case was frivolous from the outset, and the plaintiffs brought suit even though it was clearly groundless from the beginning, *see Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978), the defendants' motion for attorney fees will be granted, in an amount as assessed in Part III of this memorandum, below.

### F. Fees Incurred in Pursuit of Appeal

In addition to the fees incurred in the district court proceedings in these cases, the defendants also seek to recover their appellate attorney fees, in the total amount of $42,195. The defendants, however, have not articulated a legal foundation for their claim for appellate attorney fees, and this Court is aware that, despite a thoughtful and persuasive brief filed by the defendants in the Sixth Circuit in support of the their motion in that court for appellate attorney fees, the Sixth Circuit denied—without discussion and without instructions to this Court—the defendants' motion for appellate attorney fees.

On the basis of that order, this Court finds that it is likely without jurisdiction to award attorney fees incurred during the appeal, and that in any event it is bound by the law of the case to deny the defendants' motion insofar as it seeks appellate attorney fees. *See e.g.*, *Arizona v. California*, 460 U.S. 605, 618 (1983) ("As most commonly defined, the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should [generally] continue to govern the same issues in subsequent stages in the same litigation."). Although it is unclear to what extent the Sixth Circuit's ruling may be deemed a ruling on an issue of law, in light of the absence of any explanation for the ruling, this Court nonetheless deems itself constrained by the decision, particularly in light of the fact that the Sixth Circuit's mandate, which was issued the same day as the order denying the defendants' motion for appellate attorney fees, directed only reconsideration of this Court's orders denying attorney fees incurred up through entry of summary judgment, without reference to the issue of appellate attorney fees. The

defendants' motion for attorney fees will therefore be denied insofar as the defendants seek to recover, in this Court, any portion of the fees incurred during the appellate phase of these cases.

## III.    APPORTIONMENT OF FEES

Based on the analysis above, the Court finds that the defendants are entitled to recover partial fees in the Charlie Jackson, Jerry Jackson, and Long cases (Case Nos. 3:09-cv-1004, 3:09-cv-1005, and 3:09-cv-1013), and that the defendants are entitled to recover all fees incurred in connection with the Minnis case.  The question remains whether fees can reasonably be apportioned so that the defendants are awarded fees *only* in connection with those parts of the plaintiffs' cases deemed to be unreasonable and frivolous, *Fox v. Vice*, 131 S. Ct. 2205, 2214 (2011), given that the defendants amalgamated the work done on all seven of the originally filed cases up until October 22, 2010, and the remaining five after that date.  The Court finds that such a reasonable apportionment is possible based on the billing records and affidavits submitted by the defendants.  *Cf. Garner v. Cuyahoga Cnty Juvenile Court*, 554 F.3d 624, 641 (6th Cir. 2009) (holding that where multiple civil-rights plaintiffs are found liable for attorney fees under § 1988 in the same proceeding equitable apportionment of fees is warranted).

In their original motion for fees, the defendants sought to recover the total fees related to defending all seven of these companion cases in the amount of $207,015.00.  The defendants reached this figure by multiplying an hourly attorney rate of $150 by 1380.1 total hours.  In their supplemental brief (Case No. 3:09-cv-1003, ECF No. 138), filed at this Court's direction after the Sixth Circuit remand, the defendants state that they have "self-reduced" the total fee incurred, and now seek $31,501.64 from each of the five sets of plaintiffs that pursued an appeal of the dismissal of their particular case, or a total of $157,508.20.[4][5]  The plaintiffs do not object specifically to the hourly rate, the number of hours spent on the matter, or the apportionment of fees among the five cases for which an appeal was pursued.  The

---

[4] The defendants did not appeal the denial of their motions for attorney fees in connection with the two cases that non-suited prior to reaching the summary judgment stage, *Williams v. Sumner County Board of Education*, Case No. 3:09-cv-1012, and *Decker v. Sumner County Board of Education*, Case No. 3:09-cv-1014.  The Sixth Circuit remand therefore does not pertain to these cases, and defendants are not entitled to recover fees in those cases.

[5] In addition, the defendants seek the fees associated with the appellate phase of the case in the amount of $42,195.  As set forth above, the Court has determined that it is without authority to award appellate attorney fees in this case.

Court finds the hourly rate to be imminently reasonable, even below market rate, and also finds that the time spent on the case was reasonable.

Because the Court has found that the Minnis plaintiffs' case was frivolous and unreasonable from the outset, the Court will award to the defendants the full amount of fees sought in that case: $31,501.64.

In the other three cases in which the Court will award fees (Case Nos. 3:09-cv-1004, 3:09-cv-1005, and 3:09-cv-1013), the Court has concluded that the plaintiffs knew or should have known that their cases had become frivolous and unreasonable, at the latest, by the time discovery was concluded. The original discovery deadline in all these cases was October 1, 2010. The Magistrate Judge amended that deadline in October 2010 in order to permit the defendants to conclude additional discovery, but the dispositive-motion deadline remained November 1, 2010. In addition, the Decker and Williams plaintiffs filed their voluntary dismissal motions and the Court granted those motions on October 22, 2010. Based on all of this information, the Court finds that all the plaintiffs knew or should have known that their cases were unreasonable by or before October 22, 2010.

The defendants' billing records reflect that their attorneys spent 451.3 hours on the case after October 22, 2010 up through March 15, 2011, and the defendants incurred a fee totaling $67,695 during that time period. That fee, divided by five, yields a per-plaintiff total of $13,539. The defendants' motions for attorney fees in Case Nos. 3:09-cv-1004, 3:09-cv-1005, and 3:09-cv-1013 will be granted in part, and the defendants will be awarded $13,539 in each of those three cases.

An appropriate order is filed herewith in each case respectively.

Thomas A. Wiseman, Jr.
United States District Judge